## WOOD v. WOOD.

No. 12446—Opinion Filed June 12, 1923.

Rehearing Denied July 17, 1923.

Second Rehearing Denied Oct. 16, 1923.

### 1. Judgment—Vacation for Fraud.

False evidence or perjury alone, relative to an issue tried, is not sufficient ground for vacating or setting aside a judgment; the fraud which will authorize the court to vacate a judgment must be extrinsic or collateral to the issues tried in the cause wherein the judgment was rendered; it must be such fraud as to prevent the other from having a trial of the issues.

### 2. Divorce—Custody of Children—Modification of Decree.

A modification of the decree awarding custody of children will not be made unless it be shown that the circumstances of the parties have changed, or unless material facts are disclosed which, at the time the decree was rendered, were unknown and could not have been ascertained with reasonable diligence.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; Thos. W. Champion, Judge.

Action by Sam G. Wood against Etta Wood (now Freeman) to modify divorce decree. Reversed and remanded, with directions.

Wm. G. Davisson and Chas. W. Wortman, for plaintiff in error.

Sigler & Jackson, for defendant in error.

Opinion by FOSTER, C. On April 10, 1915, the defendant in error, S. G. Wood, plaintiff below, filed an original action in the district court of Carter county, Okla., against plaintiff in error, Etta Wood, now Freeman, defendant below, for an absolute divorce and custody of a minor child, Margaret Wood, then eight years of age. The parties will be hereinafter designated as they appeared in the court below.

On April 12, 1915, defendant filed her answer and cross-petition, denying generally the charges in plaintiff's petition, and charging the plaintiff with habitual drunkenness and extreme cruelty, and praying for an absolute divorce, the care and custody of said minor child, temporary alimony and attorney fee, permanent alimony, and a division of property.

On April 22, 1915, the plaintiff filed an amended petition, charging defendant with gross neglect of duty, adultery with one Walter Freeman and others, cruelty, and a general denial of the matter set up in said answer and cross-petition. Said petition contained a prayer for an absolute divorce and custody of said minor child by reason of the wrong and fault of the defendant.

Said cause came on for trial on May 21, 1915, and the court entered a decree, denying the prayer of plaintiff's amended petition and granting the defendant a divorce, committing the custody of said minor child, Margaret, to the defendant and conveying and setting apart to the defendant a house and lot in the city of Ardmore, Okla., being a part of lot 7 in block 375. together with all the household and kitchen furniture located therein. The court further ordered the plaintiff to pay defendant for the support and maintenance of said child until she reached her majority the sum of $20 each month, and an attorney fee of $100.

On March 3, 1917, upon application of the plaintiff, the court entered an order directing the defendant to deliver said child to the plaintiff one day each week, and further ordering defendant to appear on April 2, 1917, and show cause why the decree of May 21, 1915, in the original action, should not be revoked and the defendant adjudged in contempt of court. But this application was, on motion of the defendant, on April 2, 1917, stricken from the files for the reason that plaintiff was in default in the payment of alimony and in contempt of court.

Again, on January 3, 1919, plaintiff obtained an order modifying the original divorce decree of May 21, 1915, in which the care and custody of said minor child was taken from the defendant and awarded to the plaintiff, and in pursuance of this order, the sheriff of Tulsa county executed a writ and delivered said child to plaintiff at Ardmore, Okla., on January 7, 1917. But this order was on January 13, 1919, thereafter, on motion of the defendant, vacated.

On the same day a separate action was filed by the plaintiff in the district court of Carter county, Okla., being cause No. 4100, asking for a receiver for the property set apart to defendant in the original decree of May 21, 1915, wherein defendant obtained a judgment for the property, and said receiver immediately qualified and took charge of said property, and has at all times since been in charge thereof under the direction of the court.

Although the order of January 3, 1919, taking the custody of said child from the defendant and awarding her to the plaintiff, had been set aside, it was agreed, upon the suggestion of the court, that the child should be allowed to remain in the custody

of plaintiff pending a final hearing on a petition of plaintiff to modify the original decree of May 21, 1915, which petition had been filed on August 1, 1917.

By an order of court entered April 12, 1919, the action for receiver and all matters pending therein, as cause No. 4100, were consolidated with the original divorce action No. 2841. In his petition filed August 1, 1917, the plaintiff prayed for a modification of the original decree entered on May 1, 1915, wherein defendant obtained a divorce by reason of the wrong of the plaintiff, and was awarded the custody of the minor child, Margaret, and the conveyance of the home place in the city of Ardmore. In the petition, plaintiff alleges that the defendant obtained said property division after a fraudulent agreement had been made with plaintiff to use the same as her home and as a home for the minor child, and that he was induced to make said agreement by the sworn testimony of the defendant and Walter Freeman, as witnesses, at the trial of the original cause, each testifying that they had not been guilty of adultery. That said sworn statements and all statements of defendant and Freeman, denying adultery, were false and made for the purpose of deceiving plaintiff and inducing him to agree to said property division. That defendant and Walter Freeman had conspired to bring about a separation, a divorce, possession of said property, and the custody of said child for the purpose of marrying each other, and selling or incumbering said property and enjoying the benefits thereof. That after the divorce, an attempt had been made to mortgage said property, being the family home in the city of Ardmore; that the defendant and Walter Freeman had married since said decree was rendered; that they had failed to keep the child, Margaret, in school and church, carrying her from place to place; that Freeman was a reckless, careless spendthrift, and a man of bad reputation; that said judgment was therefore obtained by fraud, and should be modified by committing the custody of said child to plaintiff, and divesting the title to said real estate out of the defendant and vesting it in the plaintiff.

In her answer the defendant entered a general denial of the charges contained in plaintiff's petition, admitted her marriage with Walter Freeman, but specifically denied a conspiracy with Freeman to defraud plaintiff out of his property, or the making of any false or fraudulent representations to plaintiff, as charged in his petition; denied that her husband, Walter Freeman, was a reckless spendthrift, or unsuitable to have

the custody of the child, Margaret; alleged that said child had been surrounded by every comfort and had had proper schooling and religious training; that the child was 12 years of age and preferred to stay with her mother; that said Walter Freeman had a large income as an expert automobile mechanic, was thrifty, industrious, and able to keep said child in more comfortable circumstances than plaintiff; that the receiver had been wrongfully appointed without notice to defendant; that plaintiff had wrongfully, and without proper notice to defendant, obtained said order, and also an order permitting said child to remain in his custody, pending the final disposition of the cause, and that both orders should be set aside; that the original decree giving said property to defendant and committing the custody of the child to her be confirmed. A copy of the original decree and of the order appointing the receiver was attached to defendant's answer.

The cause was tried September 15, 1920. and on January 3, 1921, the court entered judgment in favor of the plaintiff, vacating the decreee of May 21, 1915, in so far as it awarded alimony and custody of child to defendant, decreeing said real estate to the plaintiff and ordering the receiver to report, and decreeing the care and custody of said child to the plaintiff, to all of which the defendant excepted. Motion for a new trial was filed and overruled, exceptions taken, and the defendant brings the case to this court for review, and assigns the following errors:

"First.    The said court erred in overruling the motion of plaintiff in error for a new trial.

"Second.    Said court erred in admitting evidence on the part of the defendant in error.

"Third.    The judgment rendered by said court was contrary to law.

"Fourth.    The judgment rendered by said court was contrary to evidence.

"Fifth.    The judgment rendered by said court was contrary to the law and the evidence.

"Sixth.    The judgment rendered by said court was not sustained by the evidence."

Generally speaking, the objections taken by the defendant to the judgment of the lower court are that the court was not authorized by the pleadings or the evidence to set aside the decree that had been rendered in the case. In our judgment, all of the assignments of error may be disposed of under this general head.

The plaintiff insists that the lower court was justified by the evidence in setting aside and modifying the original judgment, first, because the judgment was rendered upon an agreement and contract signed by the parties, and the party in whose favor said judgment was rendered procured said contract by fraud, in that she never intended to carry out said contract and agreement, and wholly violated and disregarded this agreement as soon as the judgment was rendered; and, second, because the judgment was procured by reason of collusion and conspiracy on the part of the prevailing party, in that both the defendant and the witness Freeman testified falsely in the case, and enabled the defendant to recover judgment by reason of such collusion and false testimony.

On the other hand, it is insisted by the defendant, first, that plaintiff wholly failed to prove by competent evidence the material allegations of fraud and conspiracy contained in his amended petition, which would authorize the court to modify said decree as to permanent alimony; and, second, the plaintiff failed to prove by competent evidence either fraud in the procuring of the decree, or any material change in the circumstances of the parties, or any material facts unknown at the time the decree was rendered, which could have been ascertained by reasonable diligence, or any other facts which would authorize the court to modify said decree as to the custody of said minor child; third, that the judgment of the court modifying said decree is manifestly against the weight of the evidence, and is contrary to law. It is well settled that a judgment may be set aside after the term, for fraud, practiced by the successful party, in obtaining the judgment or order. Section 5267, Rev. Laws 1910.

We have carefully scrutinized the evidence introduced at the trial in the court below, and we fail to find any testimony upon which the court could base a finding of fraudulent conspiracy. The evidence reveals that the plaintiff himself originally instituted a divorce action against the defendant, his wife, in which he charged adulterous relations with Walter Freeman, and that upon the issue of fact thus tendered, testimony was taken, including, besides the testimony of himself and wife, the testimony of various other witnesses, and as a result. the defendant was completely exonerated of these charges, and a divorce granted by reason of the wrong of the plaintiff.

In view of the fact that the plaintiff is shown to have been the aggressor in the fil-

ing and prosecution of the charges of adultery mentioned, it is difficult to conceive how the defendant could have been laying a trap to ensnare the plaintiff into such an agreement as he alleges was made. No presumption could have been indulged in that the defendant was guilty of the charges which were preferred, and it was only natural to expect that she would vigorously refute these charges. We prefer to believe the defendant to have been interested rather in protecting her good name than in carrying out a conspiracy to defraud plaintiff out of his property.

There is some testimony to the effect that after the cause had been tried, and the court had orally announced from the bench a judgment granting the defendant a divorce, and after it had announced an intention to reserve the question of a division of property until the next day, the plaintiff met the defendant's attorney in the attorney's office and entered into some sort of an agreement in writing respecting a division of the property. The agreement, however, was not in evidence at the trial in the court below, and the contents of the agreement are a matter for conjecture only. There was no testimony that this agreement was entered into as a result of any fraudulent conspiracy between the defendant and Walter Freeman formed prior to the trial, and no evidence that the court knew anything about the agreement.

So far as the record discloses, the court, at a later date, entered a judgment, granting the defendant a divorce, setting apart the home place in the city of Ardmore to her, and awarding her the custody of the child, Margaret, based entirely upon the testimony as detailed by the witnesses on the stand.

The evidence shows that the plaintiff himself was interested in bringing about this agreement for the reason that the necessity for this agreement from his standpoint did not arise until after the close of the trial when he found, as he states himself that he had failed to establish his charges. We think the evidence wholly fails to show a fraudulent conspiracy, or that the judgment of the court was procured as a result of such fraud.

It is next insisted that the judgment was fraudulently obtained, and therefore void, because of a conspiracy on the part of the defendant and Walter Freeman to commit perjury at the trial, and as a result of such conspiracy they did testify falsely with respect to acts of adultery between them.

In the first place it may be observed that if the defendant and Walter Freeman committed perjury in the first trial. as plaintiff insists, such perjured testimony was given upon a matter directly in issue at the trial, wherein plaintiff was the aggressor, and in a case of this kind perjured testimony alone will not furnish ground for setting aside the judgment. El Reno Mutual Fire Insurance Co. v. Sutton, 41 Okla. 297, 137 Pac. 700. False evidence or perjury alone, relative to an issue tried, is not sufficient ground for vacating or setting aside a judgment; the fraud which will authorize the court to vacate a judgment must be extrinsic or collateral to the issues tried in the cause wherein the judgment was rendered; it must be such fraud as to prevent the other from having a trial of the issues. Thigpen v. Deutsch, 66 Okla. 19, 166 Pac. 901; Brown v. Trent, 36 Okla. 239, 128 Pac. 895; Electric Plaster Company v. Blue Rapids Township, 81 Kan. 730. 106 Pac. 1070; Graves v. Graves, 132 Iowa 199, 109 N. W. 707.

The evidence. however, totally fails to show that either the defendant or Walter Freeman committed perjury in the first trial. The evidence shows that the defendant and Walter Freeman were not married until almost two years after her divorce from plaintiff. During this time. the evidence shows, she did not keep company with Freeman, and married when at Durant in 1917, at a time when he was paying a visit to the defendant's sister.

We cannot agree with counsel for plaintiff that perjury of these witnesses was established by their subsequent marriage. The defendant had been released and dissolved from her former marriage, and she had a right to marry whom she pleased, and we can find no connection between her marriage with Freeman nearly two years after the trial, and the testimony which they gave at the trial. It would be most unreasonable if the marriage of defendant and Freeman should be accepted as proof of adulterous relations nearly two years prior to their marriage. To do so, would unjustly brand the defendant not only as an adulteress, but a perjurer.

It is true, as pointed out by counsel for plaintiff, that decrees of divorce as to the care and custody of minor children are rarely made final, but may be modified from time to time to meet the requirements of a child's welfare. This court is not unmindful of the fact that it must be guided by what appears to be for the best interest of the child, Margaret, in respect to her temporal, mental and moral welfare. Morris v. Morris, 81 Okla. 222, 198 Pac. 70.

The evidence discloses that since the decree divorcing plaintiff and the defendant, the defendant has lived for the most part at Durant and Tulsa; that upon the granting of the divorce, she went to Durant, and there remained until her marriage on the 17th of February, 1917; that during this time the child, Margaret, was well cared for and kept in school, except a few days when sick. The evidence shows that after the defendant and Freeman were married, they moved to Tulsa, Okla., where they continued to live up until the time of the trial; that Freeman is a kind and affectionate husband and step-father. is engaged in the automobile business with an income of from $150 to $600 monthly; that the child, Margaret, while with the Freemans has had a good home, has been well provided for, has had proper schooling and proper associates. There is evidence that Walter Freeman is a thrifty and industrious business man, and that he owns a one-half interest in a garage in Tulsa, from which he derives an income of $600 per month. The child, Margaret, testified that she preferred to be in the custody of her mother.

Except for the fact that the defendant had removed from Ardmore, no change had occurred in the circumstances of the parties since the trial which would suggest any modification of the award originally made by the court. In taking the child and leaving Ardmore. the defendant violated none of the specific terms of the original decree. The removal of a child to some other place in the state by the mother is not of itself sufficient to warrant a court in modifying a decree of divorce awarding her the custody of the child. where there is no evidence showing that any controlling condition which existed at the time of the decree had changed by her subsequent conduct, and where there is no substantial reason affecting the best interests of the child for modifying the decree. Stanfield v. Stanfield, 22 Okla. 574, 98 Pac. 334.

"A modification of the decree awarding custody of children will not be made unless it be shown that the circumstances of the parties have changed, or unless material facts are disclosed which at the time the decree was rendered, were unknown and could not have been ascertained with reasonable diligence." 14 Cyc. 811.

Upon a survey of the whole testimony, we are unable to find any controlling change in the circumstances of the parties which would warrant the court in setting

aside the original award of the child to the mother.

The cause is accordingly reversed and remanded to the district court of Carter county, with instructions to set aside the decree modifying the decree rendered in the original divorce suit between plaintiff and defendant, reinstate said decree, set aside the order appointing a receiver, and take such further action in the premises, in accordance with this opinion, as the facts at this time warrant.

By the Court: It is so ordered.