DOROTHY TRAUDT, petitioner-appellant,

*v.*

OTTO EMIL TRAUDT, JR., defendant-respondent.

[Submitted March 8th, 1934.  Decided May 4th, 1934.]

*Mr. Hugo Woerner,* for the appellant.

*Mr. C. Harold Gascoyne,* for the respondent.

The opinion of the court was delivered by

CASE, J. This is an appeal from an order in chancery reducing alimony. The original suit was for divorce upon the ground of desertion. The decree *nisi,* granted the wife on May 7th, 1929, had awarded alimony at $15 a week with the provision that "this allowance is to continue until further order." The final decree, entered August 8th, 1929, directed "that the said decree *nisi* be made and become absolute," and made no other provision as to alimony. Defendant gave notice to the petitioner that on Tuesday, July 25th, 1933, he would apply "to the chancellor, or such advisory master who may be sitting for him, for an order wherein and whereby the amount of alimony provided for in the decree *nisi* \* \* \* be reduced \* \* \*." The matter was heard by Advisory Master Child. Affidavits *pro* and *con* on the merits were submitted, and on August 17th, 1933, an order was signed by the chancellor, on the advice of the advisory master, changing the provision in the decree *nisi* as to alimony and reducing the same from $15 per week to $5 per week. The order recites the appearance of counsel for the respective parties and the submission and consideration of the petition and affidavits of the defendant, the affidavit of the petitioner and the arguments of counsel. It further recites a consent by the respective solicitors that any order made in the cause concerning the reduction of alimony should take effect as of July 25th, 1933. Appended to the order is this statement signed by the solicitor for appellant: "I have no objection to the form of the above order." There is nothing to indicate that the appellant raised any objection below on the ground of jurisdiction; indeed her counsel admits in the brief that no such objection was made.

The following are the grounds of appeal:

1. The order should have modified the final decree and not the decree *nisi*.

2. Neither the final decree nor the decree *nisi* was subject to modification, neither decree containing a clause for liberty to apply for a modification thereof.

3. The advisory master had no power to advise or make the order of modification, there having been no general or special reference to him; nor could the chancellor make a rule for general references to advisory masters.

4. The order of modification should not have been made because the defendant was in contempt of court by the order of the chancellor made on November 22d, 1932.

5. There was no such change in the circumstances of the parties since the prior application as to justify a modification in the amount of alimony.

6. The application for a modification of the decree should have been denied.

We take up the grounds *seriatim*.

The first is, we think, captious. The final decree contained no provisions as to alimony except as the decree *nisi* blended into it. Where alimony is ordered in a decree *nisi* in a suit for divorce such order remains in effect until the court otherwise orders (*Sweeney* v. *Sweeney, 95 N. J. Eq. 192*), were it otherwise appellant would be entitled to no alimony payments whatever. If the decree *nisi* is amended, the final decree, with which in this respect the decree *nisi* is merged, is thereby amended.

The decree *nisi* did contain a clause leaving the alimony provisions open to modification in the words "and this allowance is to continue until further order." We need not consider whether that reservation was necessary.

The court of chancery had jurisdiction over both the subject-matter and the person. The order of modification was signed by the chancellor. It was his order. *In re Giamportone, 116 N. J. Eq. 67.* True, it was advised by a master, but there was nothing irregular about that. The office of master in chancery is coeval with the court itself in this jurisdiction. Its historical significance here may be briefly

noted. In the few years preceding the Lord Cornbury ordinance, masters in chancery seem to have held the court, sometimes with the governor presiding, sometimes alone. The Lord Cornbury ordinance, 1705, authorized the appointment, "whereby the business of the subject is the sooner dispatched and finished, to their great ease and benefit," of masters of the court, and other officers. *19 N. J. Eq. 579, appendix.* Likewise the Governor Franklin ordinance, 1770, constituting the governor as the chancellor, authorized the appointment of "so many masters, clerks, examiners, registers and other necessary officers as shall be needful to the holding of the said court, and doing the business therein." *Ibid. 581.* A characteristic service of a later period, 1853, is illustrated in *Kean* v. *Johnson, 9 N. J. Eq. 401,* wherein, the chancellor being disqualified by earlier connection with the defendant, the matter was referred to and, in effect, decided by Cortlandt Parker, as master. The office of vice-chancellor was created later.

Either recognizing or supplementing the inherent authority of the chancellor to make references to masters, the legislature provided in section 104 of the 1902 Chancery act (*1 Comp. Stat. p. 449*):

"The chancellor may refer to any master in chancery * * * any cause or other matter which, at any time, may be pending in the court of chancery, to hear the same for the chancellor, and to report thereon to him, and advise what order or decree should be made therein,"

And further in section 107 of the same statute:

"It shall be lawful for the chancellor, by rule of court, to fix and determine to what masters the references provided for by this act shall be made * * * and the chancellor may make all such general rules for the effectual execution of this act as he shall deem necessary and proper."

On April 1st, 1933, the chancellor made a general rule reading in part as follows:

"In matrimonial causes, applications for orders or decrees "excepting orders of publication and orders of reference,

which shall be made to one of the advisory masters in Trenton), * * * may be made to an advisory master in his respective district, and such applications are hereby referred to such advisory master, to hear and advise orders or decrees without special order of reference; and in all matrimonial causes, whether litigated or unlitigated, the order of reference shall be made to one of the advisory masters unless otherwise ordered by the chancellor to hear the same for the chancellor and report thereon to him and advise what orders or decrees should be made therein."

On the same day Francis Child was appointed an advisory master to serve in the Newark district, with power under that rule.

The master, having been appointed, was an officer of the court of chancery, both by rule and by statute. The power to hear and to advise at the will of the chancellor was his. The method by which an issue, cognizable in chancery (the parties and the cause being actually in court), should come to the master for consideration was one of procedure. By general rule, grounded in the statute, applications for orders and decrees in matrimonial causes were cognizable before a special group of masters of whom Mr. Child was one. The generality of the rule is not, we think, a valid objection. The rule appears to be a workable piece of court mechanism. The pending issue arose on an application for an order in a matrimonial cause. It appears to have been within the classification that under the rule required no special order of reference, and if so, nothing more need be said.

But whatever objection the appellant might, in season, have voiced against the method pursued, the fact is that, acquiescing in that method, she appeared in response to notice and placed her proofs in a channel that brought them to the chancellor, who, acting thereon, signed the order under appeal. Those proofs are entitled "In Chancery;" they are in the files of that court where they belong; and upon them the order was made. It was the intention of both parties that precisely that course should be taken. The issue was in the court of chancery. It was decided by the chancellor, the con-

stitutional officer for that function, upon proofs submitted by the parties to that end. Under the circumstances appellant may not on appeal, for the first time, raise the objection that there was not a proper order of reference. If the appellant considered that the order was not, as it purports to be, the act of the chancellor, she should have raised that question below. The order, as it comes to us, is that of the chancellor, rendered on the advice of one of his masters; and as such it is entirely competent.

The state of case discloses that on November 22d, 1932, the respondent was adjudged in contempt by the court of chancery in that he was then $990 in arrears in his alimony payments and that of that sum there still remains unpaid the sum of $30 to which should be added $20.87 taxed costs; and the argument is that for that reason the court of chancery erred in entertaining the application for a reduction in the current alimony requirements. The court of chancery has held that it is an established rule of that court not to relieve a party of his duties under the court's order unless that order is first obeyed (*Cooper* v. *Cooper, 103 N. J. Eq. 416*); but the principle rests mainly upon the conception that a party may not at the same time and in the same matter be a suitor before and a contemner of the court. It is grounded in the displeasure of the court at the disobedience of its mandate and is in the interest and for the safety of the public with respect to the due administration of justice. It is not primarily for the particular opposing litigant in whose favor the order stands, and a departure does not of itself give him ground of appeal. It is not error, *per se,* that the court of chancery, to accomplish equity, should grant relief to a party by modifying an existing order with which, to the last letter, he has not complied. Indeed in the case at bar there had been substantial compliance.

The proofs sustain a finding that the financial condition of the respondent has changed materially for the worse since the decree fixing alimony was made, that his earnings have become very small and that he has been and is quite unable to pay the amount originally decreed.

We find no. error in any of the grounds of appeal. The decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.