GRACE R. ACHESON, complainant,

*v.*

GEORGE W. ACHESON, defendant.

[Decided May 3d, 1946.]

Messrs. *Scammell, Knight & Reese* (*Mr. Scott Scammell,* of counsel), for the complainant.

*Mr. Meyer W. Stein* (*Mr. John J. Breslin, Jr.,* of counsel), for the defendant.

VAN WINKLE, A. M.

The parties were married on December 31st, 1933—a second marriage for both. Now the wife is fifty-five and the husband is fifty-four. The wife's first husband is dead but the husband's first wife, from whom he was divorced in Nevada just before his marriage in Elkton, Maryland, to his present wife, the complainant, is still alive, and apparently she is being paid by him, whether voluntarily or under order of a court does not appear, $6,500 annually for her support, which sum he has been paying from a time before the filing of the bill for separate maintenance herein on August 6th, 1937.

·In her bill the wife alleged the commission of many acts of extreme cruelty culminating in a brutal assault by the husband in July, 1937, after which she left him and made complaint to a justice of the peace on July 3d, 1937; and the husband was held in bail to await the action of the grand jury. The wife alleged in her bill that because of the effects of the assault she necessarily spent time for treatment in a hospital in New York City. This feature is mentioned because on the final hearing before me the wife alleged that she was still suffering from the effects of the assault and still needed medical treatment. In her bill she alleged that the husband was in receipt of an annual income of not less than $50,000 from certain trusts established by his parents for his benefit.

The husband filed no answer to the bill; and the cause came on for final hearing on July 5th, 1939, at which time a decree of separate maintenance was advised by the advisory master of the vicinage.

On June 26th, 1939, the husband and wife entered into an agreement of many pages covering many matters, transfers of personal property, &c. In this agreement the husband agreed to pay to the wife during their joint lives a sum representing 20% of his net income as defined in the agreement. Generally speaking, this net income was to be arrived at by a calculation beginning with the gross taxable income from the trusts. Then a deduction was to be made of the amount of federal and state taxes payable by the husband on his income and there was to be another deduction of $6,500 annually, the amount of the husband's first wife's alimony or support so long as his former wife lived, &c. The agreement provided for a "drawing account" for the wife of $1,575 quarterly, a total of $6,300 for each year. After the income from the trusts for a given year had been determined on the basis of actual facts which then would be known it was provided that the wife was to receive up to the 20% of the net income.

Thus we seem to see that apparently the expectation was that the wife was to receive more than $6,300 a year for separate maintenance.

In the agreement the husband agreed to execute a will whereby he would exercise his power of appointment of or over the *corpus* of the trust funds so that if he should predecease the wife there would be purchased for her benefit from the *corpus* of the trust funds an annuity policy in a named insurance company which should provide for the payment to the wife of $7,000 annually in quarterly installments each year for the remainder of the wife's life.

Again we seem to see that apparently the agreement provided for separate maintenance for the wife at a rate of more than $6,300 annually—probably at the rate of $7,000 annually.

A credible surmise is that if testimony had been taken in 1939 when the decree for separate maintenance herein was made as to what should be the amount to be paid her for separate maintenance to be provided by the decree, that a larger amount than is provided by the agreement would have been ordered paid.

The decree of separate maintenance of July 5th, 1939, has this recital:

The defendant interposing no defense the court finds that the defendant without any justifiable cause abandons the complainant and separates himself from her and refuses and neglects to properly maintain and provide for her.

Thus we see that the husband waived any defense he might have had to the wife's bill of complaint.

The decree "approves" the agreement as if testimony as a basis for an approval had been taken; and the decree adopts the agreement as part of the decree, the agreement being marked *Exhibit A* in connection with the decree.

When matters were opened to me on a motion day and I was then informed by counsel concerning the form and contents of the decree and respecting the long agreement of the parties appended to the decree and intended to be incorporated therein as a part thereof I characterized the decree as "an unusual one." Now, I find that Vice-Chancellor Backes in *Hebble* v. *Hebble,* 99 *N. J. Eq.* 53; 132 *Atl. Rep.* 113; *affirmed,* 99 *N. J. Eq.* 885; 133 *Atl. Rep.* 919, characterized the decree then before him as "a somewhat unusual decree." That decree, like the 1939 decree in this suit, was agreed upon by the parties. In that case afterward "both parties desired a modification of the decree and the elimination of all matters except as a straight money allowance." The unusual decree in that case had brought "complications," and certainly the decree in this suit has brought complications and litigation.

The parties operated under the 1939 decree for some time with more or less continuity. The litigation since the making of the decree I do not need to even refer to, as I see matters, except as to the petitions now before me.

When matters were opened to me I found that the wife by her petition that had been filed was asking to have the husband adjudged to be in contempt because he had not made payments as provided in the decree, and she asked for an establishment of the arrearages and for the enforcing of their payment. And I then heard the statement of counsel for the husband that he intended to file an answer to the wife's petition to have him adjudged to be in contempt, &c., and moreover that he intended to file a petition to have the decree of 1939 "vacated" or "reopened" or "modified." I then stated that the circumstances appeared to be such that I would be

warranted in applying the principle of the *Cooper Case*, 103 *N. J. Eq.* 416; 143 *Atl. Rep.* 559. In short, that as the husband was asking for affirmative relief he would need to comply with the provisions of the decree respecting payments for separate maintenance before his application for modification would be considered.

Thereafter, after further arguments were made time was given that the husband might be enabled to file his petition for a modification and then the statement was made by counsel for the husband that he would pay up in full all arrears for separate maintenance so that his petition for a modification might be received for consideration. However, it appeared on final hearing that the husband had not paid up. On the hearing counsel for the husband stated in open court that he was then tendering a check which he had in his hands, and for $11,594.28, to the counsel for the wife and that the amount covered all arrears, but this check was not received by the counsel for the wife because something was said by counsel for the husband about "conditions."

Now, there are two petitions before me for decision, one of the complainant to have the defendant adjudged to be in contempt because of his failure to comply with the provision for payment for separate maintenance in the 1939 decree, and to establish and enforce payment of arrearages and the other of the defendant.

The petition of the defendant alleges that the decree of 1939 is *coram non judice;* that the agreement intended to be made part of that decree "is not binding on this court;" that "all provisions of said agreement are null and void and contrary to the public policy of this state;" that defendant's "only obligation to complainant is his common law duty to provide proper maintenance and support;" that "this court's jurisdiction in such cases is limited to the fixing of adequate support and maintenance under the provisions of the statute in such case made and provided;" "that the court has no jurisdiction, inherent or otherwise, to compel the defendant to specifically perform the provisions of the said agreement as such or as part of the decree of this court;" that "the defendant and complainant were incompetent when the agreement was made to contract with respect to defendant's com-

mon law duty to support complainant;" that "there has been a material change in defendant's financial condition which makes it inequitable and unjust for him to be compelled to carry out the provisions of the agreement as such or as part of the decree of this court;" that the said agreement "is invalid, ambiguous, contrary to public policy, unenforceable and should be set aside and for nothing holden," &c.

The petition of the defendant contains this paragraph:

12. Your petitioner admits the power and right of this court to enforce a husband's legal duty to support his wife as distinguished from the power to enforce a contract for that purpose, and admits that the court in fixing the amount of separate maintenance in any case may take into consideration the amount agreed upon in any agreement between the parties but that such agreement is not controlling and may be disregarded by the court.

And the petition of the defendant contains this paragraph:

13. Your petitioner further alleges that he is and at all, times has been willing to discharge his obligation to provide suitable maintenance for the complainant and ,that he will abide by any order made by this court fixing the amount of such maintenance pursuant to the provisions of the statute in such case made and provided.

The defendant's petition concludes with the following prayer:

Your petitioner therefore prays that the said decree of July 5th, 1939, together with the agreement of June 26th, 1939, annexed thereto, may be vacated and set aside and for nothing holden, that in lieu thereof this court take testimony to determine the reasonable needs of. the complainant and your petitioner's financial circumstances to the end that an order or decree may be made in this cause fixing the amount of separate maintenance to be payable by your petitioner to the complainant.

The petition of the defendant to the extent that it prays for a decree for separate maintenance on the basis of present conditions is to be granted; but to the extent that it prays for a vacation of the 1939 decree it is to be refused. Nor, of course, is the agreement to be "vacated" or declared "null and void" on the defendant's present petition.

The defendant contends that the 1939 decree should be "vacated" because of the agreement feature, that is, the connecting of the agreement with the decree as shown by the decree itself. However, it is clear that the decree has legal virtue and that it is a valid decree notwithstanding that it is an "unusual" one. The agreement provided the court with a statement of the suitable amount to be decreed as separate maintenance for the complainant. It is to be said that parties should be encouraged to agree on a suitable amount for separate maintenance; and when they so agree their agreement merges in the decree if the court adopts the amount stated in the agreement. *Corbin* v. *Matthews,* 129 *N. J. Eq.* 549; 19 *Atl. Rep.* (2d) 633.

A decree for separate maintenance is to be made under the authority of the statute (2:5–39). And so such a decree should be a straight-money decree. Unusual separate maintenance decrees which provide or attempt to provide for more than separate maintenance by a straight-money · allowance should not be made; but if a decree is so made it is a valid decree for separate maintenance to the extent that it provides a straight-money allowance therefor. An attempt to include other matters beyond a straight-money allowance does not invalidate a decree for separate maintenance to the extent that it provides for a straight-money allowance. If parties make agreements comprehending other matters than a straight-money allowance they are to be left to their agreements and their own devices respecting them as they may be advised. Decrees for separate maintenance providing for more than straight-money allowances bring complications, as happened in the *Hebble* suit (*supra*), as I have said, and sometimes they bring not only complications but litigation if either party has money to litigate with, as has happened in this suit.

Even if, as contended here, the parties being husband and wife could not enter into an enforceable agreement as between themselves still it is to be said that the agreement of 1939 is at the least a paper signed by the defendant which was then revelatory of his means and in which he stated an amount of money payments which he regarded as suitable for the separate maintenance of the complainant and which he agreed

should be decreed. The agreement as to these things was evidential when the 1939 decree was made; and I may add that the agreement is so evidential now, but not controlling, subject to changes in the circumstances of the parties, if any since 1939, in the absence of any present agreement by the parties as to what is now a suitable money payment for the separate maintenance of the complainant. It is to be noted that the trusts mentioned in the agreement still subsist and that the defendant's first wife is still living and he is paying to her $6,500 a year for support.

Should the agreement of 1939 be placed out of view, then I should need to consider a factor concerning which some testimony was taken but incidentally and only in response to a question or two by me, namely, "the style of living of the parties." When this factor is to be considered by the court it is considered with the purpose of endeavoring to fix payment for separate maintenance "at what a wife would have a right to expect as support if living with the husband." See *Dietrick* v. *Dietrick*, 88 *N. J. Eq.* 560; 103 *Atl. Rep.* 242; *Dinnebeil* v. *Dinnebeil*, 109 *N. J. Eq.* 594; 158 *Atl. Rep.* 475; *Hebble* v. *Hebble, supra; affirmed*, 99 *N. J. Eq.* 885; 133 *Atl. Rep.* 919.

If I were to consider this "style of living" factor probably more testimony would need to be taken. However, in her bill the wife alleged that the defendant owned a farm of some ninety-six acres in Sussex County, New Jersey, upon which there are erected numerous and expensive buildings; and she alleged that her husband had advised her that he had expended well over $100,000 in the improvement of the said farm. And the uncontradicted testimony of the wife on the hearing before me shows an established luxurious style of living when she and the husband lived together, with "servants, butler, cook, gardener and wife, extra gardeners by the day, riding horses, groom, four automobiles and swimming pool." Perhaps it should be noted that the defendant's mother has a mortgage on the farm referred to, on which apparently no interest has been paid during recent years, and should this mortgage be foreclosed then a levy under an execution against the defendant would apparently not be collectible from the farm property.

In granting the husband's petition for a straight-money decree to be based on the present circumstances of the parties, I have concluded that the decree should be for separate maintenance at the rate of $9,600 annually, beginning from the date of final hearing, February 26th, 1946. In fixing this amount consideration has been given to the changes in the circumstances of the parties since the decree of 1939 was made, namely, the change in the husband's income during the years from 1939 onward and the important change brought about by the federal income tax law, which change has been effective since 1942. For the years 1942 onward the wife has been obliged to pay federal income taxes on any amounts received by her from the husband under the 1939 decree and in the same period he has been materially benefited to the extent that that law affects the amount of his net income and income taxes to be paid by him. See *Christensen* v. *Christensen,* 137 *N. J. Eq.* 538; 45 *Atl. Rep.* (*2d*) 677; *Jacobs* v. *Jacobs,* 328 *Ill. App.* 133. Because alone of the change in the federal income tax law the wife since 1942 has received less for separate maintenance than the net sum provided by the 1939 agreement and the 1939 decree which adopted the agreement to the extent as hereinbefore stated.

In attempting by these conclusions to sufficiently display how the problem of what is a proper amount to be now allowed to the wife for separate maintenance has been solved I am constrained to state that counsel for the husband have misapprehended matters, and to add that their estimates of what amount should be paid and their reasons therefor have not advanced the problem toward a solution. Without any reference to any of the factors that I need to consider, acting lawfully, counsel for the husband stated in open court that "$300 a month would give the wife a comfortable living;" and later in a letter received by way of memo counsel for the husband stated that "the amount should not exceed $6,000 a year * * * thousands of people go through a lifetime on much less." And further counsel for the husband stated that "no reason appears why the wife should not go to work." In short, counsel for the husband have been asking me to ascertain how cheaply the wife might live and to allow for separate maintenance an amount ascertained on that basis.

The 1939 agreement may be used by me as I have stated, to the extent that it provides for the payment of sums for separate maintenance; and taking the agreement alone into consideration, and disregarding all other factors, the change in the federal income tax law as it has affected and now affects both parties guides me to my conclusion to allow $9,600 annually for separate maintenance, which sum after payment by the wife of income taxes bears a fair correspondence to the sum provided to be paid by the 1939 agreement and the 1939 decree which adopted the agreement on this head, namely, at least $6,300 annually. Counsel for the husband seem to think that the present proceedings should result in not only a voiding of the 1939 agreement and a vacating of the 1939 decree—which is not to be the result of the present proceedings as I have hereinabove stated—but also that the agreement as a paper signed by the husband revealing his means had no evidential value at the time the 1939 decree was made and that it has no evidential value now and also that the 1939 decree is not valid even to the extent that it provided for money payments for separate maintenance.

As to arrearages—I determine that there is due for arrearages under the 1939 decree as of February 26th, 1946, the date of final hearing, $12,311.78; and that $321.27 interest computed on deferred payments is to be added thereto, making a total of arrearages and interest $12,633.05.

The order establishing the arrearages with interest to the amount of $12,633.05 may provide that execution may issue therefor.

The application to have the husband adjudged to be in contempt for his failure to comply with the provision for payments for separate maintenance in the 1939 decree is denied, but without prejudice.

The order respecting arrearages is not to contain an order for a writ of sequestration. Such a writ may be applied for after the order is entered and should the circumstances then warrant writ of sequestration may be ordered.

I will advise a decree for separate maintenance and an order as to arrearages in conformity with these conclusions.