John Wade CARPENTER, Appellant,

v.

Bonnie Bagert CARPENTER, Appellee.

No. 56215.

Supreme Court of Oklahoma.

March 16, 1982.

Rehearing Denied May 24, 1982.

---

Patrick G. Stoia, Tulsa, for appellant.

John M. Freese and Raymond L. Hasselman, Tulsa, for appellee.

OPALA, Justice:

The appeal presents three issues: [1] Did the trial court's transfer of child custody from the father to the mother constitute a valid exercise of power to modify prior custodial arrangements? [2] Was there error in declaring the mother entitled to continued support alimony due under a foreign divorce decree? and [3] Did the trial court err in denying the father's plea for reduction of his spousal support obligation imposed by an out-of-state decree? We hold that (a) the order modifying prior custody is legally unassailable, (b) there is no reversible flaw in determining that the support obligation imposed on the father by the out-of-state divorce decree is in the nature of spousal maintenance rather than child support and (c) the trial court's denial of the father's plea for reduction of his spousal support obligation is against the clear weight of the evidence.

The parents of the child whose custody is at issue here were divorced in New Jersey in 1976. The divorce decree terminated their eight-year-old marriage, granted custody of the minor child to the mother, made provision for child support and support alimony and divided the marital estate.

Until midsummer of 1978 the parties acquitted themselves in accordance with the decree. The mother and child lived in New Orleans, Louisiana and the father resided in Tulsa. Prompted by concern over the child's low scholastic achievements, the father brought an independent suit in Tulsa County for an order allowing him legal custody until June 1979. The child would then be returned to the mother without need for judicial intervention. The mother consented to, and fully cooperated in, these arrangements.

Less than four months later, in November 1978, the mother removed the child from school in Tulsa and took her to New Orleans. The father promptly brought habeas corpus proceedings in New Orleans. These resulted in the return of the child to

the father. The major part of the evidence adduced in that hearing consisted of testimony given by the mother's former roommate. It imputed to her flaws of character and erratic behavioral pattern serious enough to render her unfit as custodian.

Within three months of the child's return to Oklahoma the father petitioned the Tulsa court for an order of permanent custody. Additionally, he sought recompense for the money expended by him in his successful effort to regain custody by habeas corpus. Though admittedly given notice of the hearing, the mother elected not to appear. At the default hearing which culminated in an April 4, 1979 order vesting permanent custody in the father, a transcript of the New Orleans habeas corpus proceeding was admitted in support of his plea. The decision was rested upon a finding of substantially changed conditions which materially affected the best interest of the child. The court also undertook to impose on the child the status of being dependent-and-neglected and prescribed standards of behavior the mother was to follow or suffer judicial severance of the maternal bond. Her rights of visitation came to be suspended. A copy of this order was formally delivered to the mother by a local officer. She did not appeal from the decision.

Six months later, the father brought a proceeding in Tulsa to extinguish his decree-imposed obligation to pay child support and to be relieved of an agreed obligation, incorporated into the New Jersey decree, to provide the mother with a home in Louisiana. The mother responded to that plea. She disclaimed any right to receive child support during the time the father had custody, but challenged the remaining portions of the father's motion. She also brought a motion to vacate the April 4th order in which she challenged the court's power to adjudicate the status of her child as deprived. By a supplemental motion she alleged that the April 4th order had been procured by fraud.

The trial court disposed of her challenge to the deprived-status adjudication by modifying its April 4th order to excise from it references to the child's deprived status and all language which placed the mother's parental rights in legal peril. The mother appealed from that disposition. Her appeal now stands dismissed for failure to brief.

By its December 1, 1980 order the trial court disposed of the remaining issues in the Tulsa case. Those issues may be divided in two parts: the first of these concerns the father's alleged fraud in procuring a change of custody and the second deals with the legal effect to be ascribed to the parties' New Jersey divorce decree. The trial court found that (a) both parents were fit to have the child's custody and (b) the evidence which gave rise to the April 4th order had been procured by father's fraud. Although in its findings the trial court stated the April 4th order was subject to vacation on grounds of fraud, it elected instead to modify that order by extending the father's temporary custody period to June 1981. At that point in time the child was to be retransferred to the mother. The trial court also declared that the New Jersey divorce decree—requiring the father to buy a house in Louisiana and to allow the mother to live in it—was in the nature of an agreed spousal support-and-maintenance obligation rather than child support. The father appealed from that order.

## I.

### CHANGE OF CUSTODY

The father contends the trial court erred when it removed exclusive custody from him and gave it to the mother. The order changing custody, he argues, was, in legal effect, a vacation of a prior custody order effected without conforming to the mandatory requirements of 12 O.S. 1971 § 1031. He also contends the order cannot constitute a valid modification under 12 O.S. Supp.1979 § 1277, because it fails to include both a finding of permanent and substantial change in conditions and that the decreed change is for the best interest of the child. We find the order under review le-

gally unassailable as a modification of prior custody order.[1]

■ Custody contests are of equitable cognizance. The court may exercise continuing jurisdiction of disputed claims. On appeal, the trial court's disposition is reviewed by the standards applicable to chancery cases.[2] The court's decision is presumed to include a finding favorable to the successful party upon every fact necessary to support it.[3] While an appellate court may and will examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence.[4] Whenever possible, an appellate court must render, or cause to be rendered, that judgment which in its opinion the trial court should have rendered.[5] A decree need not rest upon uncontradicted evidence.[6] It is not fatal to the validity of an equity decision if, on the basis of the evidence presented, the chancellor might have been equally correct in reaching a conclusion different from that which he actually did.[7] If the result is correct, the judgment is not vulnerable to reversal because the wrong reason was given for the decision or because the trial court considered an immaterial issue or made an erroneous finding of fact.[8]

We are not bound either by the reasoning or the findings of the trial court. Whenever the law and the facts warrant, we may affirm the judgment if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct.[9] Unless the decision is found to be against the clear weight of the evidence, the appellate court must indulge in the presumption that it is correct.

■ A change of custody is justified when the case falls into one of two categories: (1) when circumstances of the parties have changed materially since the prior custody order or (2) when material facts are revealed which were either unknown or could not have been ascertained with reasonable diligence at the time the last prior determination was made. *Ness v. Ness.*[10] This rationale of *Ness*—bottomed upon early Oklahoma case law [11]—is to be regarded as a guidepost in custody contests. Our continued approval of its teaching is clearly demonstrated by precedent that followed its pronouncement.[12]

■ Our review of the record yields ample evidentiary support for the decision reached below. A former roommate of the mother who was a witness for the father in the Louisiana habeas corpus proceeding tes-

**1.** Although the mother sought to *vacate* the April 4th order, we need not discuss that issue since the decision under review effects a modification rather than vacation of that order.

**2.** *Stovall v. Liberty Plan of America, Inc.,* Okl., 414 P.2d 242, 247 [1966].

**3.** *Stovall v. Liberty Plan of America, Inc.,* supra note 2.

**4.** *Snow v. Winn,* Okl., 607 P.2d 678, 681 [1980]; *Harrison v. Eaves,* 191 Okl. 453, 130 P.2d 841, 844 [1942]; *Wahby v. Reneger,* 199 Okl. 191, 185 P.2d 184, 185 [1947].

**5.** *Snow v. Winn,* supra note 4.

**6.** *Wahby v. Renegar,* supra note 4; *Kunze v. Wilkerson,* Okl., 426 P.2d 340, 342 [1967]; *Brown v. Greever,* Okl., 379 P.2d 689, 691 [1963].

**7.** *Snow v. Winn,* supra note 4; *Harrison v. Eaves,* supra note 4; *Kunze v. Wilkerson,* supra note 6; *Brown v. Greever,* supra note 6.

**8.** *Douglas v. Douglas,* 176 Okl. 378, 56 P.2d 362, 365 [1936]; *Mahan v. Dunkleman,* Okl., 205 Okl. 54, 234 P.2d 366, 370 [1951]; *Janeway v. Security Bank & Trust Co. of Ponca City,* 177 Okl. 342, 58 P.2d 892, 896 [1936].

**9.** *Moree v. Moree,* Okl., 371 P.2d 719, 720 [1962].

**10.** Okl., 357 P.2d 973, 975 [1960].

**11.** *Wood v. Wood,* 92 Okl. 297, 216 P. 936, 940 [1923]; *Stanfield v. Stanfield,* 22 Okl. 574, 98 P. 334, 339 [1908]; *Jackson v. Jackson,* 200 Okl. 333, 193 P.2d 561, 562 [1948].

**12.** *Gibbons v. Gibbons,* Okl., 442 P.2d 482, 484 [1968]; *Rice v. Rice,* Okl., 603 P.2d 1125, 1128 [1979] citing *Gibbons* supra; *Gilbert v. Gilbert,* Okl., 460 P.2d 929, 931–932 [1969]. The two-pronged approach in *Ness,* supra note 10, to custody modification was noted in *Gibbons,* supra. There, we clearly identified *Gibbons* as falling into the category of "changed circumstances."

tified that her New Orleans testimony against the mother was false. She stated that the father had suborned her perjured testimony by certain inducements. The falsehood of the prior account given by this witness was not known to the trial court during the April 4th custody hearing at which the father relied on her testimony to secure exclusive custody and to suspend the mother's visitation rights. The facts concerning the father's fraudulent conduct came to light during subsequent proceedings on the mother's motion to vacate the adverse custody arrangement.

Under the *Ness* standards, the fraud so practiced by the father in knowingly offering perjured testimony would clearly fall under the rubric of a material fact which though in existence was unknown to the court when making the prior permanent custody order. Its subsequent disclosure would alone be sufficient legal warrant for a change of custody.

The evidence adduced in the proceedings now under review demonstrates no unfitness of the mother. From our examination of the record we cannot say that the order changing custody to the mother either rests on an infirm legal basis or is against the clear weight of the evidence.

## II.

### DECLARATION OF RIGHTS UNDER THE FOREIGN DIVORCE DECREE

Father contends the trial court erred in ruling that his obligation under the New Jersey divorce decree to provide housing for the mother was in the nature of spousal rather than child support.

By the agreed provisions of the New Jersey decree the father stood directed to buy a home in Louisiana for the mother's use. The home was to be owned by the father in fee. Until her remarriage or until the child's emancipation, death or attainment of the age of 21 years, she was entitled to reside in the home for a small rental fee. The father sought judicial declaration that this obligation fell under the rubric of child support and was hence subject to termination when custody was transferred to him.

█ The relief sought by the father is in the nature of a judicial declaration of rights under a foreign divorce decree. Although this claim was not plead as a separate cause of action for declaratory judgment, we may and do treat it as such. 12 O.S.Supp.1974 § 1651 et seq.[13] A declaratory judgment suit may be either legal or equitable. Its character depends upon the essential nature of the case.[14] Since the declaration and relief sought here dealt with interests cognizable in equity, we will treat the declaratory relief claim as one in chancery.

█ The declaration sought by the father called for an adjudication indirectly affecting rights in real estate situated in Louisiana. Although, as a general rule, a court of equity cannot affect title to property situated in another state, when it has *in personam* jurisdiction of the parties—as it did here—it may determine their equities in out-of-state real estate and order them to act, or refrain from acting, with regard to such property.[15] It is not significant that the decree of the court could not, of its own force, create an interest in the foreign realty. Equity is free to use its coercive process *vis-a-vis* the person and compel the execution of the proper instruments that are needed to carry out the court's decree. It is the executed conveyance, and not the de-

**13.** By the 1974 amendment district courts became authorized to entertain declaratory judgment disputes over rights claimed under a foreign judgment. *This amendment modified this court's pronouncement in Mills v. Mills,* Okl., 512 P.2d 143 [1973]. The pertinent provisions of the 1974 amendment to § 1651 are: "District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of *any for-* eign judgment or decree * * * ". [Emphasis added].

**14.** *Hoffman v. City of Stillwater,* Okl., 461 P.2d 944, 948 [1969].

**15.** *Fall v. Eastin,* 215 U.S. 1, 11–12, 30 S.Ct. 3, 7–8, 54 L.Ed. 65, 70–71 [1909]; *Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 [1908].

cree itself, which will become operative upon the title to the foreign land.[16]

Applying New Jersey law, the trial court concluded that, insofar as the foreign consent decree required the father to furnish a residence for the mother's use, it should be construed as a provision for the mother's support and maintenance rather than for child support. The court relied on case law under which the interpretation of language in a consent decree depends on the intention of the parties as it may be divined from the text of their agreement.[17]

Because the mother will ultimately lose her right to occupy the home when the child has reached the age of 21, the father argues that this provision in the decree should be regarded as in the nature of child support and hence be terminable on the mother's loss of custody. Whatever appellation be given to the challenged provision—whether child or spousal support-obligation—its intent is crystal-clear to us. Should the mother not remarry, she is to have a home provided for her use—at the very longest—until the child becomes 21 years of age. There is nothing in the text of the agreement to indicate that her right of occupancy depends on the retention of the child in her custody. The mother's interest in the home can be likened to a possessory estate not unlike that of leasehold. It is subject to defeasance upon the happening of enumerated conditions. At the time of trial none of those conditions had occurred.

The father offers no citation to New Jersey authority which would demonstrate error in the trial court's decision. On our examination of the contractual divorce-decree provisions in question, viewed together with the extrinsic evidence as to the intent of the parties, we find the conclusion reached below neither against the clear weight of the evidence nor contrary to the established principles of equity.

## III.

### MODIFICATION OF SPOUSAL SUPPORT UPON CHANGED CONDITIONS

Remaining for our consideration is the father's contention that the trial court erred in not reducing the amount of mother's housing support obligation. He urges that undisputed evidence in the record as to a change in conditions since the divorce mandates a reduction of his decree-conferred support obligation.

The trial court found that the conditions with respect to the mother's need for support or the father's ability to contribute had not undergone a substantial change that would require modification of the imposed obligation.

The authorities presented by the parties appear to indicate that by the terms of New Jersey law decree-imposed spousal obligations, whether consensual or court-decreed, are subject to modification.[18] Because a New Jersey obligation is modifiable, the Full, Faith and Credit Clause would not be offended by an Oklahoma re-adjustment of that support provision.[19] The father press-

---

16. This doctrine is entirely consistent with those provisions of the U. S. Constitution which require a judgment in any state to be given full faith and credit in the courts of every other state. The doctrine does not extend the jurisdiction of the courts of one state to property situated in another, but only makes the judgment rendered conclusive of the merits of the claim or of the subject matter of the suit. It does not carry with it into another state the efficacy of a judgment that may there be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there. Once so made, it can only be executed in the latter state according to the *lex loci rei sitae. Fall v. Eastin,* supra note 15; *Fauntleroy v. Lum,* supra note 15.

17. *Newark Publishers' Association v. Newark Typographical Union,* 22 N.J. 419, 126 A.2d 348 [1956]; *Schiff v. Schiff,* 116 N.J.Super. 546, 283 A.2d 131, 141 [1971].

18. *Lepis v. Lepis,* 83 N.J. 139, 416 A.2d 45, 49–50 [1980]; *Martindell v. Martindell,* 21 N.J. 341, 122 A.2d 352 [1956]; *Chalmers v. Chalmers,* 65 N.J. 186, 320 A.2d 478 [N.J.1974]; *Grossman v. Grossman,* 128 N.J.Super. 193, 319 A.2d 508 [1974].

19. *Clark v. Clark,* Okl., 380 P.2d 241, 243 [1963]; *Catlett v. Catlett,* Okl., 412 P.2d 942, 944–945 [1966]; *Clester v. Heidt's Estate,* Okl., 353 P.2d 699, 701 [1960].

es upon us certain undisputed evidence which shows *prima facie* the factum of a financial change. He also complains of legal error in the trial court's unwarranted refusal to aid his discovery efforts by appropriate coercive process.

Situations in which New Jersey courts have recognized "changed circumstances" as warranting spousal support modification are, *inter alia*, "an increase in the cost of living",[20] "an increase or decrease in the supporting spouse's income" [21] and "subsequent employment by the dependent spouse".[22] Undisputed testimony in the record reveals the father is unable to maintain his present lifestyle and to continue paying the present support obligation. While working at two jobs—one of which occupies his evenings and weekends—his monthly personal expenses and support obligation leave him with a negative net income.

The father intended to show an increase in the mother's resources from personal holdings and from income. He argues that he should have been allowed discovery in pursuit of evidence showing her present conditions. Because the mother did not cooperate, his discovery efforts were all fruitless.

The trial court's denial of the father's plea for reduction of his spousal support obligation is against the clear weight of the evidence but the record before us is not sufficient for this court to determine the issue.[23] We hence reverse the trial court's finding of an absence in changed conditions, leaving support liability reduction an unadjudicated controversy to be determined on remand.

Because there is some indication that the extent of father's support liability may be an issue in a certain Louisiana litigation now in progress, we direct that if this be true the trial court should not act but defer to the other forum the resolution of the controversy over the decrease in support liability. Should the trial court be satisfied from further proof before it that the dispute over support reduction is not an issue in the Louisiana state-court litigation, Oklahoma should make its forum available. Once the trial court becomes satisfied that the issue we remand for redetermination is viable for litigation in this state, we have no doubt that it will then proceed, with dispatch, to aid the father in securing all coercive process reasonably necessary to assure him of the opportunity for adequate discovery.

As modified by this opinion, the trial court's order is affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES and LAVENDER, JJ., concur.

DOOLIN, J., concurs specially.

SIMMS and WILSON, JJ., concur in part and dissent in part.

DOOLIN, Justice, specially concurring:

The majority correctly states that the relief sought by the father is in the nature of a judicial declaration of rights under a foreign divorce decree under the Oklahoma Declaratory Judgment Act. As amended in 1974, the Oklahoma Declaratory Judgment Act permits a district court to construe a *foreign* judgment or decree. The amended version does not upset our holding in *Mills v. Mills* [1] as applied to Oklahoma judgments. We do not explore the distinction between foreign and state judgments as to possible equal protection problems under the fourteenth amendment to the United States Constitution. Suffice to say it is

---

**20.** *Lepis v. Lepis,* supra note 18 at 51; *Martindell v. Martindell,* supra note 18 at 353.

**21.** *Lepis v. Lepis,* supra note 18 at 51; *Martindell v. Martindell,* supra note 18 at 355; *Traudt v. Traudt,* 116 N.J.Eq. 75, 172 A. 749 [1934]; *Acheson v. Acheson,* 24 N.J.Misc. 133, 46 A.2d 817 [1946].

**22.** *Lepis v. Lepis,* supra note 18 at 51; *Ramhorst v. Ramhorst,* 138 N.J.Eq. 523, 48 A.2d 834 [1946]; *Kavangh v. Kavangh,* 134 N.J.Eq. 358, 35 A.2d 691 [1944].

**23.** *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 [1955].

**1.** *Mills v. Mills,* 512 P.2d 143, 148 (Okl.1973).

obvious a party to a state domestic decree or judgment has a full panoply of state remedies to pursue when a party to a foreign decree has a limited arsenal for relief.

We held in *Mills* "that Oklahoma's Declaratory Judgment Act, 12 O.S. 1971, § 1651 et seq., may *not* be used to interpret rights fixed by a final decree of a court of competent jurisdiction." (Emphasis ours).

A dispute arose between the parties in *Mills* over a contract settlement covering real and personal property incorporated into the divorce decree. We determined that "much of what the wife really sought was in the nature of a second trial on the identical issues previously adjudicated by the decree of divorce." [2]

We concluded from these facts that a declaratory judgment action would not lie as a substitute for an appeal. This was the correct result, but the holding went beyond these facts and precluded the use of a declaratory judgment to interpret or construe *any* prior judgment.

Declaratory judgments should not be allowed as a guise to permit collateral attack on final judgments. They should be restricted to determining *what* the prior action held.[3]

Courts must frequently interpret the meaning of prior judgments in substantive actions. In *Titsworth v. Titsworth*, 206 Okl. 399, 244 P.2d 295 (Okl.1952), we held that in a hearing upon application to construe a divorce decree the court is limited to giving effect to doubtful or ambiguous provisions of the decree, but may not add new provisions to the decree. We stated in *Knight v. Armstrong*, 303 P.2d 421 (Okl.1956), that in construing an obscure or ambiguous judgment, the entire record may be considered to determine what was adjudged. We reiterated this interpretive limitation in *Jones v. Jones*, 402 P.2d 272 (Okl.1965), in the Court syllabus at page 273:

"The purpose and function of the court in construing an order concerning custody and child support, entered by it coincident with or subsequent to the divorce decree, is to give effect to that which is already latently in the order, and the court has no warrant to add new provisions, substantive or otherwise, which were omitted or withheld in the first instance in the order."

*Dickason v. Dickason*, 607 P.2d 674 (1980), held if the ambiguity was on the face of the record the court is confined to the inspection of the judgment roll when construing it.

There may be good reason to permit declaratory judgments where a party's rights or duties determined by a prior judgment have become ambiguous. It is far preferable to permit a declaratory judgment to clarify the matter *before* a party has been harmed or has breached a duty. The initial case would still be res judicata as to all the rights it determined. The declaratory judgment would be res judicata as to the construction it placed on the prior judgment.

A declaratory judgment proceeding is not the appropriate method of questioning a final judgment or decree *unless* such final judgment or decree has become the source of definite rights *and* is unclear or ambiguous.[4]

This test precludes erosion of the doctrine of res judicata by requiring that a prior judgment or decree be the source of definite rights. It also guarantees the presence of an actual controversy by requiring the prior judgment be unclear or ambiguous.[5]

SIMMS, Justice, concurring in part, dissenting in part:

I concur in the conclusion reached by the majority in affirming the trial court on the issue of custody.

**2.** Id. at 147.

**3.** 26 Okla.L.Rev. 454, 455.

**4.** *de Marigny v. de Marigny*, 43 So.2d 442 (Fla. 1949).

**5.** See Sherfy, "*Mills v. Mills*: Is Construction of Prior Judgments A Proper Subject for Declaratory Relief," 10 Tulsa L. Journal 281 (1974).

I dissent to that portion of the majority opinion remanding the issue of support obligation. I would affirm the trial court in all respects.

I am authorized to state that WILSON, J., joins in the views expressed herein.