## BRISTOW v. CENTRAL STATE BANK et al.

No. 8690—Opinion Filed May 21, 1918.

(173 Pac. 221.)

(Syllabus.)

### 1. Usury—Interest—"Discount."

When the lender exacts of the borrower as a condition of the loan a sum in addition to the highest legal rate of interest, the loan is thereby tainted with usury and the taint is not removed by giving this charge the name of "discount."

## 2. Same—Device—Question for Jury.

Defendant agreed with plaintiff to make her a loan of a sum of money, with one P. as surety on her note, and to charge her for the use of the money, in addition to the highest legal rate of interest, the sum of $25. P. was to have a second mortgage on her farm as security for signing the note. Subsequently the negotiations resulted in the note being made to P., who indorsed the same. The plaintiff and P. went to the bank where plaintiff delivered the note and mortgage to the president of the bank, who gave plaintiff and P. each a deposit slip for the amount of the loan, and had P. give plaintiff a check for said sum. Defendants' witnesses testified that it refused to make the loan to plaintiff, and that it purchased the note from P. at a discount of $25. Plaintiff and P. testified that plaintiff did not borrow the money from P., but from the bank. Plaintiff paid the note and all interest charged thereon to the bank. Held, the question as to whether the fact that the note was made to P. and by him indorsed to the bank, under the circumstances of this case, constituted a bona fide sale of the note at a discount to the bank, or was a device by which the bank charged and collected from plaintiff usurious interest for the use of the money loaned, was a question of fact for the jury.

## 3. Trial—Instructions—Theory of Plaintiff.

In a case tried to a jury, it is the duty of the court to submit, by appropriate instructions, the theory of the plaintiff, where there is evidence reasonably tending to support the same, and the failure of the court to give requested instructions, which are applicable either in the language requested or substantially so, is reversible error.

Error from District Court, Garfield County; James B. Cullison. Judge.

Action by Carrie Bristow against the Central State Bank and others. Judgment for defendants, and plaintiff brings error. Reversed, with directions to grant a new trial.

Wilson & Scott, for plaintiff in error.

Hills & Manatt, for defendants in error.

RAINEY, J. Carrie Bristow, as plaintiff, instituted this action in the district court of Garfield county, Okla., against the Central State Bank, a corporation, A. E. Stephenson, its president, and E. A. Pendarvis, its cashier, as defendants, to recover double the amount of alleged usurious interest charged her for the use of $1,077, which she claimed to have borrowed from the defendants. The defendants answered, denying generally all the matters alleged by the plaintiff in her petition. The cause was tried to a jury, resulting in a verdict for the defendants, from which judgment the plaintiff has appealed to this court. The parties will hereinafter be designated as they appeared in the trial court.

Counsel for plaintiff have discussed in their brief several assignments of error, only one of which we deem it necessary to consider.

The note evidencing the loan in this case was executed by the plaintiff to one Pendergast and by him indorsed on the back as follows:

"For value received I hereby guarantee the payment of the within note and any renewal of the same and hereby waive protest, demand and notice of nonpayment thereof.

                        "John Pendergast."

Plaintiff's theory of the case was that, although the note was made to Mr. Pendergast, the loan in reality was made to her by the bank, that she paid the interest thereon to the bank, and that the manner in which the transaction was conducted by the bank was a scheme and device on its part to evade the usury laws. The testimony which counsel for plaintiff contend supports plaintiff's theory of the case is substantially as follows: About six weeks before the Central State Bank opened for business Mrs. Bristow approached its president, Mr. A. E. Stephenson, and informed him that she desired to borrow $1,000, and proposed to give a second mortgage on her farm as security for the loan; that he responded that he was going to open his bank (Central State Bank) on the 1st of May and that he did not want to make any loans until after that time, when he would have plenty of money (to lend), and that, if she would come back to him after the bank opened, he would let her know what he could do. Mrs. Bristow went to the bank again about the 10th of May, and reopened negotiations with Mr. Stephenson, at which time he informed her that there had not been a directors' meeting, but that there would be a meeting of the board within a day or two, at which time he would submit the matter of her application for a loan, and suggested that she return later. This she did within two or three days thereafter, whereupon Mr. Stephenson informed her that he could not make the loan requested with a second mortgage on her farm as security, but that he would make it if she would give him a note with some person acceptable to him as surety. Mrs. Bristow then visited Mr. Pendergast and offered to give him a second mortgage on her farm to secure him if he would sign her note as surety, and this he agreed to do if satisfactory to Mr. Stephenson. This fact was made known to Mr. Stephenson, who advised

Mrs. Bristow that he thought it would be all right to make the loan this way, but that he would like for Mr. Pendergast to come to the bank and have a talk with him before the transaction was closed. Accordingly, Mrs. Bristow and Mr. Pendergast then went to the bank, and Mr. Stephenson first talked privately with Mr. Pendergast and then with Mrs. Bristow. With reference to this conversation Mrs. Bristow testified:

"After he had talked to Mr. Pendergast privately in his office, Mr. Pendergast came out, and Mr. Stephenson told me to come in the office, and that he wanted to have a private talk with me, and I went in. He told me that Mr. Pendergast was all right, and that he would take him on the note. He said that he only wanted to make the loan for six months. He would want the note run for six months, and that he would want 10 per cent. interest and $25 extra. I remonstrated about that, and objected and tried to kind of talk him out of it, but he stood firm about the $25, and I wanted the money and I finally agreed to pay him $25 extra. I wanted $1,077. That was what I needed. He figured 10 per cent. interest for six months on $1,077. Then he figured 10 per cent. interest on that amount of interest for six months, and added it to that, and added it all to the $1,077. Then he figured 10 per cent. on $25 for six months, and added it to the $25, and then added that to this amount, and that, he claimed, made $1,159.-85. I was going to give Mr. Pendergast a second mortgage on my farm to secure him, and I wanted my attorney, Mr. Zinser, to write that mortgage, and I told Mr. Stephenson so. So he gave me these figures, and told me to go. He told me to go to Mr. Zinser, my attorney, and for him to write the note for that amount and write this second mortgage, and Mr. Pendergast and I went together to Mr. Zinser's office with the understanding that I was to give the note to the bank with Mr. Pendergast as security. We went over there, and I gave the figures to Mr. Zinser, and I told him that he (Mr. Stephenson) was holding me up for $25 extra."

Mrs. Bristow further testified that while Mr. Zinser was engaged in drawing up the note and mortgage Mr. Stephenson called him over the telephone, and asked him to come to the bank. The purpose of this summons is disclosed by the following extract from Mr. Zinser's testimony:

"Well, Mr. Stephenson said that he knew what Mrs. Bristow was intending to do. He said she was framing up to sue Ed. Weatherly for usury and he said: 'I don't want to have anything to do with it. I won't loan her any money.' Then he went on to say that things might get all right, and she would pay the loan, and she would not cause

any trouble, and, on the other hand, we don't want to have any trouble, and she will be suing me and I don't want to have any usury claim on hands. 'I won't loan her any money.' I said: 'Will you buy Mr. Pendergast's note? You won't be loaning Mrs. Bristow any money then. You will be discounting Mr. Pendergast's paper. Will you do that?' He said: 'Yes.' I immediately left the bank and went to the office."

Mr. John Pendergast testified that he did not make the loan to Mrs. Bristow, but that an officer of the bank asked him to act as a figurehead between the two parties that they might accomplish a certain end. They advised him that he could accommodate two friends (Mr. Stephenson and Mrs. Bristow) at the same time if he would give his consent, and that he did so; that he was in Mr. Zinser's office when Mr. Stephenson called Zinser to the bank; that he and Mrs. Bristow went to the bank, and that Mrs. Bristow delivered the note and mortgage to Mr. Stephenson, who gave him and Mrs. Bristow each a deposit slip for $1,077, wrote out a check for said sum from witness to Mrs. Bristow and had her indorse it; that he did not have any understanding or agreement with the bank officials that he was selling Mrs. Bristow's note to the bank, and that they were discounting the same, but that he understood all the time that the loan was being made to Mrs. Bristow, and that his name was used in the transaction solely for the purpose of enabling Mr. Stephenson to carry out an agreement, which he stated he had with the other bankers not to make loans with second mortgages as securities. The note was in the sum of $1,159.85, and was for six months. It is conceded that it represented, in addition to the principal sum loaned and the lawful interest, $4 for mortgage tax and recording fees, and a charge of $25 which Mr. Stephenson designated as "discount." When the note came due Mrs. Bristow paid the interest thereon and extended it once or twice, and finally made payment in full.

Under this state of facts, as testified to by her witnesses, the plaintiff requested the trial court to instruct the jury that the law does not permit evasion, or any scheme or device on the part of the lender, to cover the taking, charging, or receiving of usury, and also requested the court to instruct the jury that the taking of a promissory note for a greater amount of money than is loaned to the borrower, if done to cover usury, is illegal, and that if the jury believed from the evidence in the case that such was done, it would be its duty to return a verdict for the plaintiff. The court

refused the instructions requested, and did not cover plaintiff's theory of the case in the general charge. This was reversible error. Eccleston v. Edens, 50 Okla. 237, 150 Pac. 882; Mountcastle v. Miller, 66 Okla. 40, 167 Pac. 1057.

Although the $25 charged in addition to the legal rate of interest for the use of this money is termed "discount" by the witnesses for the bank, it is too well settled to require the citation of authorities that, when a lender exacts of the borrower as a condition of the loan a sum in addition to the highest legal rate of interest, the loan is thereby tainted with usury, and the taint is not removed by giving this charge any other name, such as "discount," "commission," or "bonus." Although the president of the bank testified that the loan was not made to Mrs. Bristow, and that he purchased the note at the $25 discount from Mr. Pendergast, we have no hesitancy in saying that a jury would be authorized to find from the testimony of plaintiff and her witnesses that the loan, under the circumstances herein related, was in reality made to Mrs. Bristow, and that the way in which the loan was finally consummated was a device or scheme to evade the possible visitation of the penalties of the law prohibiting the taking or receiving of usurious interest. We cannot overlook the fact that Mr. Pendergast's liability was substantially the same in the form the loan was finally closed as it would have been had the note been made directly to the bank with Mr. Pendergast as surety thereon, according to the agreement made by the president of the bank with Mrs. Bristow. The bank, through its officers who conducted the transaction for it, knew that Mr. Pendergast had not loaned Mrs. Bristow the money represented by the note, and that it, in reality, was exacting from Mrs. Bristow, in addition to the highest legal rate of interest, the sum of $25 for the use of the money loaned by it. At least this is plaintiff's contention, which is amply supported by the evidence, and she was entitled to have the jury instructed on this theory of her case. In Garland v. Union Trust Co., 49 Okla. 654, 154 Pac. 676, this court, in an opinion by Mr. Justice Hardy, said:

"In order for a contract to be usurious there must be, in fact, an excessive charge, and said charge must be made with the unlawful and corrupt intent to take interest in excess of the lawful rate (Covington v. Fisher, 22 Okla. 207, 97 Pac. 615; Merchants' & Planters' National Bank v. Horton, 27 Okla. 689, 117 Pac. 201); and, where the contract is apparently fair on its face, and the interest reserved thereby as disclosed by the terms of the instrument sued on is within the legal limit, but the claim is made that usury was, in fact, retained, and that such usurious charge is evidenced by other collateral instruments or by some agreement or device intended as a cloak for such usurious transaction, as, for instance, the charging of a commission on the part of the lender, it then becomes a question of fact as to whether such sums were, in truth and in fact, reserved and charged as commissions, and whether the charge for services rendered, if any, were excessive or reasonable, and, if excessive, whether such excess, together with the amount of interest reserved in the contract, would amount to usury, and in such case the intention of the parties at the time the contract was entered into or the commission retained is a question of fact to be determined from all the facts and circumstances in the case, and should be submitted to a jury, or to the court sitting as a jury. Perghtal v. Cotton States Bldg. Co., 25 Tex. Civ. App. 390, 61 S. W. 428; Polk Co. Savings Bank v. Harding, 113 Iowa, 511, 85 N. W. 775; Patillo v. Allen West Com. Co., 108 Fed. 723, 47 C. C. A. 637; Merchants' Ex. Nat. Bank v. Com. Warehouse Co., 49 N. Y. 635; Covington v. Fisher, supra; Cockle v. Flack, 93 U. S. 344, 33 L. Ed. 949; Hutchinson v. Hosmer, 2 Conn. 341; Beckwith v. Windsor Mfg. Co., 14 Conn. 594; Stevens v. Staples, 64 Minn. 3, 65 N. W. 959; Carpenter v. Lamphere, 70 Minn. 542, 73 N. W. 514; Surv. Part. Massey McKesson Co. v. McDowell, 20 N. C. 252; Ketchum v. Barber et al., 4 Hill (N. Y.) 224; Kent v. Phelps, 2 Day (Conn.) 483; Thurston v. Cornell, 38 N. Y. 281; Duvall v. Farmers' Bank, 7 Gill & J. (Md.) 44; 39 Cyc. 1056, 1057; 22 Ency. Pl. & Practice, 454."

It has frequently been held by the courts that it is immaterial in what form or manner or under what pretense usury is exacted and paid, but that the offense is complete where there is an agreement that the person who has the use of the money loaned shall pay the lender a greater sum than the law permits to be charged. Our statutes (section 1005, Rev. Laws of Oklahoma 1910) inveigh against the taking, receiving, reserving, or charging of usurious interest. In this case there was an original agreement between the bank and Mrs. Bristow for her to pay, and for the bank to receive, such usurious interest. She paid, and the bank received, the amount thus contracted for, and as to whether the fact that the note was made to Mr. Pendergast and by him indorsed to the bank, under the circumstances of this case, constituted a bona fide sale of the note at a discount to the bank, or was a device by which the bank charged and col-

lected from Mrs. Bristow usurious interest for the use of the money loaned, this 'was a question of fact for the jury.

This cause is therefore reversed, with directions to the district court to grant a new trial and to take such further proceedings as are not inconsistent with the views herein expressed.

All the Justices concur.