## BARNHART et ux. v. RICHARDSON.

No. 17995. Opinion Filed May 1, 1928.

Rehearing Denied Dec. 18, 1928.

Paul N. Buford, for plaintiffs in error.

Hatchett & Ferguson, for defendant in error.

RILEY, J. This was a suit on a promissory note and to foreclose a real estate mortgage given to secure the same, commenced by defendant in error, plaintiff below, against C. H. Barnhart and his wife, Katie Barnhart.

The defense below was based upon allegations of forgery by artifice and fraud said to have been employed by plaintiff in securing the signatures of defendants to the instruments involved. A second defense was that of usury. The mortgage sued upon was what is known as a commission or second mortgage.

The court below directed the verdict upon the conclusion of testimony, and the judgment accordingly rendered foreclosed the mortgage sued upon subject to the principal mortgage in the sum of $1,800.

On appeal it is contended that the trial court erred in refusing to submit the question of fraud and usury to the jury.

We are of the opinion that there was not sufficient evidence to warrant the submission to the jury of the issue of forgery by fraud or artifice. The defendants admitted that they signed the instruments. They complain that they did not know the contents provided for commission. Such testimony as was offered and refused upon this issue tended to vary the terms of the written instruments and the same was properly refused. McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524; Miller Bros. v. McCall Co., 37 Okla. 634, 133 Pac. 183; Inner Shoe Tire Co. v. Mueller, 108 Okla. 229, 235 Pac. 1072; Green v. Cox Machine Co., 116 Okla. 255, 244 Pac. 414.

"When persons meet and negotiate concerning a contract and discuss its proposed terms and conditions and finally end the matter by executing a written contract fully covering the subject, it represents the final agreement of the parties, and oral evidence tending to vary, contradict, enlarge or narrow the terms of the writing are not admissible." Miller Bros. v. McCall, supra.

Error is urged as applied to the admission in evidence of plaintiff's exhibit A, which was a loan contract signed by C. H. Barnhart. It was shown that, after the execution of exhibit A by C. H. Barnhart, both defendants signed exhibit B, which was substantially the same as exhibit A. There was no reversible error in the admission of exhibit A.

Objection is made to the admission of exhibits B and D, which constituted the loan contract and mortgage sued upon, respectively, upon the theory that the same were not regularly acknowledged.

They were admissible and binding between the parties even without acknowledgment. Acknowledgment is only essential to the recording of the instruments under section 5266, C. O. S. 1921.

Counsel assert section 5267, C. O. S. 1921, exclusively governs the admission of such instruments, under the rule expressio unius exclusio alterius est. The text of the statute is:

"All instruments affecting real estate and executed and acknowledged in substantial compliance herewith shall be received in evidence in all courts without further proof of their execution. * * *"

We do not agree. The maxim has no application, for it contemplates that when acknowledgment is proved in substantial compliance, then further proof of execution is unnecessary. Conceding, without deciding, that irregular acknowledgment would not warrant admission of the evidence under "substantial compliance," it follows that the documents were admissible under "further proof of their execution." So then there is no "expressio unius" by the statute, but "expressio duo," or expression of an alternative; therefore, when it was proved that the instruments in fact were executed and signed, they were admissible.

We consider the asserted error of the court in directing a verdict and refusing to submit the issues to the jury and in rendering judgment for plaintiff.

Under the third paragraph of the syllabus in Garland v. Union Trust Co., 49 Okla. 654, 154 Pac. 676, where the instruments executed for the loan of money were ap-

parently fair on their face, but the claim was made that usury was in fact retained and that such usurious charge was evidenced by a collateral instrument or agreement, or device intended as a cloak exemplified by a commission, it was held the question whether such collateral instrument or commission was taken or reserved with intent to commit usury was a question of fact for the determination of the jury.

Query: (1) Was the commission agreed to be paid under the loan contract a ruse, scheme, or cloak to shield an unlawful rate of interest? (2) Was such fact a question for the jury? (3) Was usurious interest charged?

Answering the third query, we see that the principal loan was for $1,800, seven per cent. for ten years.

The interest amounted to _____$1,260.00

The commission note was for $340, dated December, 15, 1920, falling due as follows: $120 due Nov. 1, 1921; $120 due Nov. 1, 1922; $100 due Nov. 1, 1923, interest at ten per cent. from maturity and providing for accelleration by nonpayment, total _____ 340.00

Cash commission "to be deducted from the proceeds of said loan" 200.00

Total interest charged ____$1,800.00

"The test as to whether a contract is usurious is: Does the interest charge agreed to be paid under the terms of the contract exceed the amount of interest that would accrue from the terms of the loan figured at the full legal contract rate? If it does exceed such amount, it is usurious; otherwise it is not." Clement Mtg. Co. v. Johnston, 83 Okla. 153, 201 Pac. 247.

Thus we see the highest contractual rate of interest was computed. By the contracted manner of payment usury tainted the whole transaction.

So we find there was usurious interest charged and collected by reason of the contracted manner of payment.

The loan contract provides:

"I agree to pay said M. J. Richardson a commission, which commission shall be in amount in the same proportion to the commission hereinabove agreed to be paid, as said loan, as approved, bears to the amount of the loan herein contracted for, $200, of said commission to be payable in cash, to be deducted from the proceeds of my said loan. * * *"

Section 5104. C. O. S. 1921, provides:

"The interest which would become due at the end of a term for which a loan is made, not exceeding one year's interest in all, may be deducted from the loan in advance, if the parties thus agree."

The total amount deductible from the proceeds of this $1,800 loan, at 10 per cent. interest, was $180. It follows that a $200 deduction was violative of the statute cited, and when $20 excess was deducted, then the proceeds of the loan, the principal secured by the borrower, was reduced below the sum of $1,800, and correspondingly the rate of interest charged defendants was violative of the highest legal contractual rate chargeable.

There must be an intent to take unlawful interest in order to constitute usury, where the contract is apparently fair on its face. Covington v. Fisher, 22 Okla. 207, 97 Pac. 615; Metz v. Winnie, 15 Okla. 1, 79 Pac. 223.

"It has frequently been held by the courts that it is immaterial in what form or manner or under what pretense usury is exacted and paid, but that the offense is complete where there is an agreement that the person who has the use of the money loaned shall pay the lender a greater sum than the law permits to be charged." Bristow v. Central State Bank, 68 Okla. 195, 173 Pac. 221.

"Whenever the usurious character of the transaction is revealed on the face of the instrument, the unlawful intent to charge or receive an illegal rate of interest for the money loaned will be inferred from the instrument itself." Midland Savings & Loan Co. v. Tuohy, 69 Okla. 270, 170 Pac. 244.

"Where a contract is on its face usurious, unlawful intent is presumed." Darden v. Schuessler, 154 Ala. 372, 45 So. 130.

Herein the contract is not fair on its face, but usurious. The intent to charge interest is inferred from the instrument itself, and interrogatory No. 2, above, is answered in the negative.

There is no question of agency in this case, for it was alleged by defendants in their answer that plaintiff acted in person in the whole transaction to lend his own money, and the plaintiff alleged and proved this fact by his exhibit D, which shows the commission note and mortgage to be subject to the note and mortgage of the same date between the first party (defendants) and M. J. Richardson and company, for a principal sum of $1,800. Consequently, interrogatory No. 1 is answered in the affirmative.

The courts will not permit an act forbid-

den or penalized by statute to be done either directly or indirectly, nor acquiesce in the employment of any shift or device by which the lender may receive more than ten per cent. per annum for the use or forbearance of money. The plaintiff made the situation. The exhibits show conclusively on their face that the contract was usurious. The plaintiff cannot at the same time be both principal and his own agent; he cannot receive with one hand as principal a legal rate for a loan and with the other a bonus for making the loan in sum sufficient when considered as a whole to make the contract usurious. Each business should bear its own expenses. Money paid for services of the agent of the lender in procuring a loan is money paid the lender or for his benefit.

In the case of Bell v. Riggs, 34 Okla. 834, 127 Pac. 427, 41 L. R. A. 1111, it was held:

"A judge cannot sit in his own cause. A guardian cannot purchase the property of his wards. An agent cannot make a profit for himself out of the subject-matter of the agency." Porter v. Wold, 34 Okla. 253, 127 Pac. 434; Goss v. Sorrell, 33 Okla. 586, 127 Pac. 435; Union Cent. Life Ins Co. v. Pappan, 36 Okla. 344, 128 Pac. 716.

The late Commissioner Stewart well said in Bean v. Rumrill, 69 Okla. 300, 172 Pac. 452:

"The renowned loan merchant of olden Venice, if living, would find that his quondam despised calling had reached the distinction of a fine art. The ancient Shylock openly demanded his pound of flesh; his modern successors, none the less grasping, are more covert, but betray the same consummate cupidity, disguised, however, as a refinement of our present civilization.

"While some of the courts have upheld reasonable charges for actual services performed by the agent of the lender, none, so far as we are advised, have gone to the extent of permitting charges unreasonable and unfair, though under the guise of 'commission,' to stand, but in all such cases have construed the entire negotiations as one contract, and held the same to be usurious when their effect was the contracting to pay more than the highest lawful rate of interest."

See, also, First Nat. Bank, of Hobart v. Hutton, 64 Okla. 198, 166 Pac. 726.

It follows, in view of the presumed intent by reason of the text of the contract sued upon and the absence of agency by reason of the lender acting for and on behalf of himself in the whole transaction, that the cause must be, and the same is hereby, reversed, with direction to the trial court to render judgment consistent with the views herein expressed.

MASON, V. C. J., and HARRISON, LESTER, and HUNT, JJ., concur.