Fern **STOVALL** and Helen M. Council, Plaintiffs in Error,

v.

**LIBERTY PLAN OF AMERICA, INC.**, a Corporation, Defendant in Error.

No. 40878.

Supreme Court of Oklahoma.

May 3, 1966.

Woodrow H. McConnell and Wilbert G. Smith, Oklahoma City, for plaintiffs in error.

Sam S. Gill, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action by defendant in error, hereinafter referred to as plaintiff, to foreclose a real estate mortgage against plaintiffs in error, hereinafter referred to by name, or as defendants, or both.

The mortgage was signed by defendants in March, 1962, to secure payment of an installment note for $971.61 defendants gave Midwestern Advertising Corporation, Inc., (sometimes referred to simply as Midwestern Advertising" or "Midwestern") as consideration for a "Dust Master", or "Central", Cleaning System said corporation sold them and installed in the home where they resided, and which said realty the mortgage purported to cover.

Plaintiff acquired the note and mortgage, through endorsement and assignment from Midwestern soon after the latter's salesman-agent, Charles E. Johnston, had sold said vacuum cleaning system and caused it to be installed.

In connection with said sale, Midwestern through Johnston, entered into what was entitled a "Representative's Commission Agreement" between its "Advertising Department" and the defendant, Helen M. Council. Under the terms of said written agreement, Midwestern's advertising department would pay Mrs. Council $50.00 for each name of a qualified (home-owning) prospective purchaser for a central cleaning system that she furnished Midwestern, if the prospect later purchased one of said systems. After Midwestern sold plaintiff the note and mortgage above referred to, and before Mrs. Council had submitted any names of prospective purchasers for such cleaning systems to Midwestern, or its advertising department, said corporation went out of business.

After plaintiff instituted this foreclosure action (asking no judgment on the note) in May, 1962, defendants caused Midwestern and its president, Gordon Cooper, to be made party defendants to the action; and then filed their answer and cross petition, with a copy of the above mentioned Representative's Commission Agreement attached, alleging, among other things in substance, that they allowed the vacuum sweeper, or central cleaning system, to be installed upon the representation, made on behalf of Midwestern, that it could be paid for by submitting the names of other prospective purchasers of such systems at the Fifty Dollars each Midwestern was to pay for such names; that they signed the note for the purpose (merely) of showing the amount they were to pay for the cleaning system out of those commissions; that they signed the instrument sued upon in blank, without knowing its true character, and upon the representation that it was a receipt for the installation of the system; and that it was never the parties' intention that it was to become a mortgage, or to be filed for record.

Defendants Stovall and Council further alleged that, after their signing of the purported mortgage, plaintiff acted pursuant to a conspiracy with Midwestern to defraud them when its officer, Cooper, as a Notary Public, and as its agent, fraudulently and unlawfully executed an acknowledgment on said instrument, without being present when it was signed by defendants. Defendants further alleged, in substance, that they were deprived of "their part" of the contract with Midwestern by the latter's ceasing to do business in Oklahoma; that they would not have signed the mortgage had they known it to be one, nor would they have executed

the note, except upon the representation of Midwestern's agents, servants and employees, that it could be paid with commissions under said contract. Said defendants further alleged that Midwestern's fraudulent contracts and acts were known to plaintiff and its agent, Cooper. They further alleged that upon discovering said fraud, they tendered back to plaintiff and Midwestern "* * * all that they had received and demanded the cancellation of said note and mortgage, which said tender and demand was wrongfully and unlawfully refused * * *". Defendants' answer prayed the court to cancel these instruments, and, in a cross petition accompanying the answer, they adopted its allegations, and further alleged, among other things, that in April, 1962, they had made a demand upon Midwestern to release the subject mortgage, had tendered both to it, and to plaintiff, the expense of filing and recording such release, and that, during the same month, they had tendered the vacuum system back to plaintiff, along with "all other considerations received by them in the transaction." Defendants' cross petition prayed for a total of $1250.00 in actual damages against plaintiff and the defendants, Midwestern and Cooper, and also for "statutory damages" of $9.71 per day for each day after May 10, 1962, that the mortgage remained unreleased of record.

Pending trial of the cause, the depositions of both Mr. Cooper and Mrs. Council were taken and later used in interrogating them as witnesses at the trial before the court without a jury. It was established by Cooper's testimony, and other evidence, both oral and documentary, that when defendants' note and mortgage were delivered by Midwestern to plaintiff, the space provided on the mortgage form, for the legal description of the real estate involved, remained blank. Mr. Cooper testified that the procedure, when Midwestern applied to his employer (the plaintiff) to buy such paper, was for one of Midwestern's representatives to furnish such descriptions, and they were then typed into the mortgage forms in plain-

tiff's office, but were verified through a "lien check" made by plaintiff's attorney, before plaintiff purchased them and the notes secured thereby. Mr. Cooper admitted that when he executed the acknowledgment on such mortgages, the mortgagors did not bodily appear before him to acknowledge their signatures, but, he testified that he "confirmed" their signatures by telephoning at least one of the signers.

When Mrs. Council, who was the only one of the two alleged mortgagors to testify, was confronted, as a witness, with the subject mortgage, she admitted that she signed it, and rather falteringly admitted that she saw her co-defendant sign it. At one place in her testimony, however, she testified as follows:

"Q Mrs. Council, did you authorize anyone to fill in that instrument in the way it appears as a mortgage?

"A No, sir, I had no knowledge that it was a second mortgage on our house, none whatsoever. It was supposed to be a credit reference."

At the close of the evidence, and, after arguments by respective counsel, the court took the case under advisement and thereafter entered judgment for plaintiff on its cause of action against the defendants, Stovall and Council, and also for it and the defendant, Cooper, on the causes of action sought to be asserted against them in Stovall's and Council's cross petition. After the overruling of their motion for a new trial, defendants perfected the present appeal. Our continued use of the word "defendants" will apply only to plaintiffs in error.

Defendants' arguments for reversal are advanced under three propositions. Under their first one, they concede that according to the rule they quote from 59 C.J.S. Mortgages § 122, p. 166, if plaintiff caused the legal description of the home involved to be typed into the blank space provided therefor in the subject mortgage form, under defendants' authorization and with their consent, it was a valid mortgage and binding on them; but they contend that there is no evidence in the record of any such

authorization, and that Mrs. Council's testimony was that she did not even know that one of the instruments she signed was a mortgage, but signed it believing that it was for credit reference purposes.

While it is true that some of Mrs. Council's testimony, including the excerpt hereinbefore quoted, was to that effect, but she also testified (on cross examination that she has worked at Tinker Field 6 years, having been originally employed there in 1942, and returning there in 1955; that her position is that of "Director of Material Management as control officer"; that she is under civil service and owns the home, with a first mortgage on it; that she has paid "quite a bit" on this mortgage indebtedness; that she read the (second) mortgage involved in this case; and that she testified in her deposition that she expected the blank parts thereof to be filled in after it was signed. Mrs. Council further testified that she had seen many notes and contracts, and that she signed one when she executed the first mortgage on her home. When shown the instrument introduced in evidence as the installment note in this case, she testified that she was aware that it was a note (when she signed it). Mrs. Council admitted, on cross examination, that she testified in her deposition that she read the hereinbefore mentioned Representative's Commission Agreement "real good", before signing it. This agreement was introduced in evidence as defendants' Exhibit No. 2. In it, Mrs. Council is referred to as "the representative" and, as hereinbefore indicated, its printed provisions also referred to the purchase of "Central Cleaning System." Its eighth, and last, printed paragraph, immediately above Mr. Johnston's and Mrs. Council's signatures, reads:

"It is further understood and agreed that payment of compensation hereunder *shall not in any way affect* the obligation of the representative as set forth by the terms and conditions of the contract for the purchase of equipment herein referred to." (Emphasis added).

It is plain from part of Mrs. Council's deposition that she understood, at the time she signed the Representative's Commission Agreement that its execution was not to relieve defendants from their obligation to pay for the central cleaning system, through discharge of the note and mortgage they signed; and this agreement says nothing about the fees, or commissions, specified therein for referrals, being credited upon, or offset against, the note and mortgage debt. Neither is there any evidence that the maturity, or collection, of this debt was in any way dependent upon Mrs. Council's earning, or having the opportunity to earn, commissions under the Representative's Commission Agreement, although Mrs. Council testified that, when Mr. Coy (who, Mr. Cooper testified, was in charge of plaintiff's "checks department") telephoned her on March 19th (two days after the cleaning system had been installed) their conversation (with immaterial omissions) was as follows:

"* * * he says, 'I understand that you have purchased a central vacuum cleaning system, and I want to verify the amount of the loan.'

"So, I got the little pink thing out, we discussed it, I said I thought it was $699.00, but with all, it was $971.00. He said, 'Is that correct', and I said, 'Well, that's correct, Mr. Coy, but we bought this under a referral plan, and if we refer our good friends, and if they purchase this, we will get $150.00 each time they do. * * *'

"I said Mr. Johnson had * * * told us that we would make money on this deal over and above the $699.00 base price, and we were anxious to do this.

"In fact, I am waiting for a call from Mr. Johnson right now to get started, because I have got some names, and he said that is just fine, I just wanted to verify the amount, and he seemed fully aware of this referral plan, and said, 'I hope you make your money, you don't have to pay us a penny.'"

■■ Assuming that the present action is one of equitable cognizance—as the parties and trial court have treated it—our consideration of the defendants' assignments of error must be governed by certain well settled rules of appellate review applicable to such actions. One of these is that a general judgment, like the one here involved, must be presumed to include a finding of every special fact necessary to support it. Another is that, unless the judgment may be held to be clearly against the weight of the evidence, it cannot be disturbed. See Fane Development Co. v. Townsend, Okl., 381 P. 2d 1012, and Broadwell v. Flynn, 189 Okl. 620, 118 P.2d 1029.

■ We have carefully examined the entire record, and cannot hold that the trial court's presumed findings that defendants knew they were signing a real estate mortgage, when they signed the instrument in question, and that they anticipated, or contemplated, that it would thereafter be completed as such, and that they authorized, and consented to such procedure, is clearly against the weight of the evidence. Such finding is not contrary to the reasonable inferences that may be drawn from the evidence as a whole, and we cannot reverse merely because the record might also support an opposite conclusion. See Rivers v. Parker, Okl., 382 P.2d 16, and Brown v. Greever, Okl., 379 P.2d 689. Though there is no specific evidence that either of these particular defendants—among the many mortgagors that the record shows were involved in similar transactions—personally acknowledged to Mr. Cooper that they had signed the instrument, a valid, or effective acknowledgment was not necessary to make the mortgage binding and enforceable as between the parties thereto and/or their assignees. See Tit. 16 O.S.1961, sec. 15; Bauder v. Bauder, 195 Okl. 85, 155 P.2d 543; Kaylor v. Kaylor, 172 Okl. 535, 45 P. 2d 743; Barnhart v. Richardson, 134 Okl. 19, 272 P. 418, 419.

■ Nor can the trial court's presumed findings that neither the plaintiff, nor the defendants Midwestern and Cooper, were guilty of any fraud in the transaction, be held to be clearly against the weight of the evidence. Even if it be assumed that Mrs. Council was primarily motivated, in purchasing the Cleaning System (with Mrs. Stovall) by the opportunity held out to her by Midwestern, through its representatives, to earn commissions under the Representative's Commission Agreement, there is no evidence of bad faith, or fraud, on the part of those parties. There is no evidence that Midwestern contemplated going out of business before Mrs. Council had an opportunity to earn commissions under said agreement; and, as far as the record shows, that Corporation would still be installing Central Cleaning Systems in the same manner as when defendants bought theirs, had it not been stopped, or prevented, from doing so, by court injunction. The above shows why the excerpt defendants quote from § 59 C.J.S. Mortgages § 141, fails to demonstrate error in the trial court's judgment.

■ Under their second proposition, defendants assert that plaintiff was not a holder of the note and mortgage "in due course", and that it did not discharge its burden to prove that it was. Afer citing Tit. 48 O.S.1961, sec. 122 (which was in effect at all times material to this controversy) defining a "holder in due course", they concede that plaintiff was "presumptively" such a holder, but then they say, in substance, that Mrs. Council's testimony showed that Midwestern's title to the note and mortgage was defective, and that, because of this evidence, it became encumbent upon plaintiff to prove it was a holder in due course, citing Sanco Finance Co., Inc. v. Neal, Okl., 387 P.2d 113, and A. A. Murphy, Inc. v. Banfield, Okl., 363 P.2d 942. Neither of these cases is controlling here. In the Sanco Finance Company case, the jury's finding of fraud on the part of the payee of the note, subjected its endorsee to the consequences of the asserted burden of proof rule, while in this case the opposite has occurred. Here, the trier of the facts must be presumed to have found there was no fraud on the part of Midwestern, payee

of defendants' installment note, and the presumption that plaintiff was a holder in due course was never overcome. In the present case, the most that Mrs. Council's testimony shows, when given an interpretation most favorable to defendants is that plaintiff learned, through its Mr. Coy, that she expected to earn commissions that would apply on defendants' purchase of the Central Cleaning System. The question then becomes: Does plaintiff's knowledge of the Representative's Commission Agreement, entered into by Midwestern, in connection with its acquiring defendants' installment note and mortgage, overcome the presumption that plaintiff was a holder in due course (after Mr. Cooper's testimony to the effect that it purchased them in the ordinary course of its business)? This question must be answered in the negative. In Conqueror Trust Co. v. Simmon, 62 Okl. 252, 162 P. 1098, 1100–1103, both inclusive, this court set forth a very exhaustive discussion of the principles which govern this question. In the course of said discussion, it was said (among other things):

"It will not do to say that, merely because a purchaser of negotiable promissory notes in due course of business for a valuable consideration had knowledge of a legal transaction, contract, or agreement out of which said notes came into existence before purchasing the same before maturity, the maker of said notes can defeat the payment of same by showing that the said contract or agreement between him and the original payee thereof has *thereafter* been breached by said payee." (Emphasis ours).

Among the excerpts from previous cases quoted in the above case is the following from Forbes v. 1st Nat. Bank of Enid, 21 Okl. 206, 95 P. 785:

" * * *

" 'In Murray v. Lardner, [2 Wall. (U.S.) 110, 17 L.Ed. 857] supra, Mr. Justice Swayne, speaking for the court, said: "The possession of such paper carries the title with it to the holder: 'The posses-sion and title are one and inseparable.' The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it.' "

There, we also quoted from Conqueror Trust Co. v. Reves Drug Co., 118 Ark. 222, 176 S.W. 119, the following:

"1. The court erred in not directing a verdict in favor of the appellant. The uncontroverted evidence showed that the appellant was an innocent purchaser of the notes sued on. The appellant established the fact by its evidence that it paid a valuable consideration for the notes before their maturity and without any notice of any fraud in their execution or of any defenses that the makers thereof might have against the payee. This shifted the burden to the appellee to show that the appellant was not an innocent purchaser.

\* \* \* \* \* \*

"11. In the absence of any testimony first tending to show that appellant was not an innocent purchaser, the court should not have permitted any testimony as to fraud in the execution of the notes. Bothell v. Fletcher, 94 Ark. 100, 103, 125 S.W. 645. \* \* \*"

See also Delk v. City Nat. Bank of Duncan, 85 Okl. 238, 205 P. 753; Bessee v. Morgan, 84 Okl. 203, 202 P. 1012; and Producers Nat. Bank v. Elrod, 68 Okl. 248, 173 P. 659, LRA1918F, 1016.

Since there was no evidence that Midwestern had breached any agreement

with defendants at the time plaintiff took their note and mortgage from Midwestern, or even that such a breach was contemplated, there was no evidence that Midwestern's title to the note and mortgage was then defective, and likewise, no evidence that plaintiff had any knowledge of any such defectiveness. For this reason, the principles applied in A. A. Murphy, Inc. v. Banfield, supra, where there was abundant evidence that the defendant Banfield's title was defective, and that the plaintiff finance company had knowledge of this, before acquiring the notes and mortgage involved, do not apply here.

 Defendants' third proposition is, in substance, that they were entitled to judgment on their cross petition, as a matter of law, because of plaintiff's failure and refusal to release the subject mortgage, as alleged therein. They argue that, assuming the mortgage was valid and binding as between them and the plaintiff, the latter was not entitled to place it of record, inadequately acknowledged as it was. Without regard to the effect, on this argument's premise, of the trial court's previously discussed finding that Mr. Cooper was authorized by defendants to execute the acknowledgment, we think said court's judgment to the effect that the indebtedness, whose payment was secured by said mortgage, was still due and unpaid, is sufficient answer to this argument. In view of that undisputed fact, plaintiff had no duty, under the plain wording of Tit. 46 O.S.1961, secs. 14 and 15, to release said mortgage, after defendants' demand and tender of the filing fee.

As we have found no cause for reversal in the arguments presented by defendants, the judgment of the trial court is hereby affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, IRWIN, BERRY and LAVENDER, JJ., concur.