CITIZENS BANK & TRUST COMPANY OF VIVIAN, LOUISIANA, Appellee,

v.

John Francis TOMLIN and Leola May Armstrong Tomlin, husband and wife, Appellants,

and

Thomas Nelson Tomlin and Mariette G. Tomlin, husband and wife; Defendants.

No. 79156.

Court of Appeals of Oklahoma, Division No. 3.

March 23, 1993.

Wesley Brown, McAlester, for appellee.

**804**

Donald R. Hackler, McAlester, for appellants.

## MEMORANDUM OPINION

HANSEN, Chief Judge:

Appellants seek review of the trial court's order which granted Appellee's motion for reconsideration, vacated its order granting new trial and reinstated the journal entry of judgment previously rendered. Appellee, Citizens Bank & Trust Company of Vivian, Louisiana, ("Citizens"), brought this action to foreclose a mortgage executed by Appellant John Francis Tomlin and Leola May Armstrong Tomlin, ("John") upon property owned by them in Pittsburg County, Oklahoma. Defendants Thomas Nelson Tomlin and Mariette G. Tomlin, ("Tom"), were dismissed from the action and are not a party to this appeal. We affirm.

In October, 1985, Tom, John's son, executed a "collateral mortgage note" to Citizens for $375,000.00. Pursuant to this note and related hand notes, Citizens loaned Tom a total of $250,000.00. Citizens refused to loan Tom any more money under this first collateral mortgage note, maintaining the oil and gas properties which Tom had put up as collateral, had decreased in value. On July 28, 1986, Tom executed another collateral mortgage note to Citizens for $300,000.00. On that same day, Tom also executed a "collateral mortgage, collateral chattel mortgage & assignment" to Citizens, putting up certain of his oil and gas interests as collateral. In addition, John executed a mortgage to Citizens to secure Tom's $300,000.00 note, mortgaging the family farm in Pittsburg County, Oklahoma.

Both Tom and John, and their wives, executed a "collateral pledge". John's pledge of the July 28, 1986 mortgage specifically provides it was given to secure the payment of "all indebtedness and obligations up to the amount of Ten Million Dollars of Thomas Nelson Tomlin d/b/a TNT Energy Company to Citizens ... presently existing and subsequently arising, now due or to become due...." The date of John's pledge is July 29, 1986, but John testified the pledge was not actually executed until August, 1987. Pursuant to the $300,000.00 collateral mortgage note, Tom executed three "hand notes" by which Citizens advanced to him a total of $162,000.00. The first advance for $125,000.00 was made on July 29, 1986, one day after John executed the mortgage and the same date of John's collateral pledge. Tom defaulted on all of the hand notes he had with Citizens, including notes executed prior to John's mortgage for the additional $300,000.00. Tom sold the properties pledged in the July 28, 1986, collateral chattel mortgage and the proceeds were used by the bank to pay off some of Tom's indebtedness. The evidence indicates the bank used the proceeds to pay Tom's various notes, not limiting their application to notes dated on or after July 29, 1986.

On appeal, John maintains the trial court erred in determining he was responsible for over $300,000.00 of Tom's indebtedness, basically arguing fraudulent inducement regarding the execution of the mortgage. John maintains the bank president, Mr. Bennett, now deceased, promised John that his mortgage would be "kept in a drawer" and never filed, and was collateral for a $300,000.00 "line of credit" for Tom. John testified he did not intend to be responsible for any of Tom's prior debts and that he did not read the collateral pledge when he signed it. However, John knew the bank would not loan Tom any more money under the first $375,000.00 note because there was not enough collateral. John's wife testified that Bennett said he would prepare a letter evidencing the $300,000.00 "line of credit" but that they never received one. John maintains because Tom never received the full $300,000.00, the bank breached its agreement and John is not liable for any of Tom's indebtedness.

 John maintains the trial court totally disregarded his evidence of fraud. Fraud is a question of fact to be determined by the trier of fact. *Silk v. Phillips Petroleum Company*, 760 P.2d 174 (Okla.1988). To establish fraud, John must prove Citizens made a false, material representation, that Citizens knew it was false

when it was made, that it was made with the intent that John act on it, and that John relied on such representation and suffered detriment. *Id.*, at 176–177. Facts must be produced from which an "irresistible deduction of fraud reasonably arises." *Id.*, at 177. Fraud must be proved by clear and convincing evidence. *Funnell v. Jones,* 737 P.2d 105 (Okla.1985).

Did John offer proof that Citizens made a false, material representation? No evidence was presented that Mr. Bennett or any other representative of the bank represented to John that the mortgage and collateral pledge signed by John provided security only for Tom's *future* hand notes. Indeed, the very first sentence of the collateral pledge provides the mortgage was pledged as security for Tom's obligations up to ten million dollars, *presently existing* and *subsequently arising.* Nor can Bennett's alleged promise to keep the mortgage in a drawer and not file it, be considered a material misrepresentation regarding which of Tom's hand notes would or would not be secured by the mortgage.[1]

John testified he executed the collateral pledge in August, 1987 and that he had no knowledge the bank had filed the mortgage in April, 1987. Citizens presented evidence that Tom's attorney, Mr. Schmidt, was involved in clearing up the title for title insurance, and that he requested a copy of the recorded mortgage in March, 1987. Schmidt, who prepared Tom's collateral mortgage note and who participated in the loan activities at issue, testified it was his understanding that John's collateral mortgage note would *not* cover any of Tom's prior debts. Schmidt did not, however, testify regarding any alleged misrepresentations from any representative of the bank and did not testify that the mortgage was never supposed to be recorded.

Further, other than the testimony of John and his wife, there is no evidence that the $300,000.00 collateral note was to be construed a guaranteed or committed "line of credit" or "letter of credit". Citizens

presented expert testimony regarding the "collateral package" that had been executed by Tom and John and how Louisiana banks utilized these packages. The collateral mortgage note is the document that establishes the bank's lien and its priority, but does not actually evidence any indebtedness. The collateral mortgage note can be used over and over again to secure any number of hand notes, which are the instruments through which money is actually advanced. The phrase "Ne Varietur as per Collateral Mortgage, Collateral Chattel Mortgage and Assignment on this the 28 day of July, 1986" which is on the collateral mortgage note executed by John, simply identifies the mortgage with the other instruments executed in the package. The expert further testified, the creation of a collateral mortgage note in a given amount does not, standing alone, create a commitment by the bank to loan the full amount.

■ An action in foreclosure is in rem, and if tried separately from an action on the underlying note, is one of equitable cognizance. *Bank of Wilson v. Hartman,* 785 P.2d 338 (Okla.App.1989). The trial court's findings in a general judgment include a finding of every special fact necessary to support it. *Stovall v. Liberty Plan of America, Inc.,* 414 P.2d 242 (Okla.1966). The findings of a trial court sitting without a jury are entitled to the same weight on appeal that would be given a jury verdict. *Shuler v. Barnes,* 793 P.2d 301 (Okla.App.1990). If there is any evidence tending to support the findings and judgment, they will not be disturbed. *Id.*, at 302.

The trial court's judgment did not specifically address John's allegations of fraud. By finding generally for Citizens, the trial court impliedly denied John's fraud claim. After reviewing the evidence in its entirety, we cannot say the trial court's denial of John's fraud allegation is clearly against the weight of the evidence.

■ John next argues he is entitled to have certain funds marshalled from the

---

**1.** *See Gillis v. First Nat. Bank of Frederick,* 47 Okl. 411, 148 P. 994 (1915) where makers of promissory note unsuccessfully defend on

ground that bank representative promised never to enforce payment.

bank. These funds are those monies which were paid to the bank by Tom from the sale in 1988 of personal property owned by Tom and which had been pledged to the bank by Tom in his collateral chattel mortgage executed the same day as John's mortgage. John maintains his mortgage was intended to secure hand notes executed by Tom pursuant to the $300,000.00 collateral mortgage note only and that the balance due on these notes should have been reduced by the sale proceeds, thereby making $43,010.69 his total liability under the mortgage.[2] According to John, the bank applied $165,249.11 in proceeds to notes executed by Tom prior to July 28, 1986. This was error, he maintains, because the proceeds come from property which was pledged by Tom on July 28, 1986, and should have been applied only to the three hand notes executed by Tom after July 28, 1986 (Exhibits 12, 13 and 14).

The only authority John cites is 15 O.S. 1991, § 383 which provides:

A surety is entitled to the benefit of every security for the performance of the principal obligation, held by the creditor or by a co-surety, at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not.

Citizens responds that all Tom's property has been sold and the proceeds applied to Tom's indebtedness and that Citizens has fully complied with 15 O.S.1991, § 384.[3] Citizens further maintains John should be estopped from asserting the proceeds should have been applied otherwise.

The record indicates both Tom and John were involved in meetings with Citizens around December, 1988, regarding the nonjudicial sale of some of Tom's assets and the application of such proceeds to Tom's indebtedness. The evidence shows neither Tom nor John directed the bank regarding which notes would be paid from such proceeds, nor did they object to the bank's application of those monies to Tom's indebtedness.

The question to determine is whether the bank was required to put the proceeds from the sales of Tom's properties on Tom's notes which were executed after July 29, 1985. The parties have not pointed to any language in the mortgage documents which obligates them to and we have found none. Indeed, the collateral pledge signed by John pledged the mortgage for all Tom's indebtedness, presently existing and subsequently arising. In light of this language and in the absence of other affirmative language, there is nothing to support John's contention that the bank was required to apply such proceeds only to the three hand notes executed after July 28, 1986.[4] This assignment of error is without merit.

2. The six hand notes executed by Tom are:

| Exhibits | Date Executed | Principal | Status |
|---|---|---|---|
| Exhibit 8: | 05–31–85 | $ 98,021.51 | paid off |
| Exhibit 9: | 10–31–85 | $100,000.00 | only $67.00 paid |
| Exhibit 10: | 12–10–85 | $ 75,000.00 | owes $72,173.96 |
| Exhibit 11: | 11–08–85 | $ 75,000.00 | paid off |
| Exhibit 12: | 07–29–86 | $125,000.00 | owes $108,796.64 |
| Exhibit 13: | 11–26–86 | $ 25,000.00 | owes $24,929.26 |
| Exhibit 14: | 12–22–86 | $ 12,000.00 | owes $11,458.95 |

Exhibits 8 and 11, both executed by Tom before John executed his mortgage, were paid off by the sale of Tom's collateral. A total of $162,000.00 was loaned to Tom after the execution of the July 28 and 29, 1986, documents.

3. That section provides, "Whenever property of a surety is hypothecated with the property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation."

4. John argues because the three hand notes were executed by Tom after John executed the mortgage but before the mortgage was recorded and title insurance issued, that the notes weren't executed on the strength of his mortgage and he should not have to pay them. Once again, the collateral pledge that John signed pledges the mortgage for any and all of Tom's debts. Furthermore, there is ample evidence the bank would not loan Tom any more money without more collateral and that John was well aware of that fact. In addition, John testified he backdated the pledge to July 29, 1986. Why would John have "back-dated" his pledge if it were not

John's final two assignments of error can be considered together. First, he maintains he is entitled to have his mortgage cancelled because there is a failure of consideration. Second, he urges Citizens materially altered the obligation, without John's consent, and such alteration discharges him on his obligation under 15 O.S.1991, § 338. John argues the failure of consideration and the material alteration is the bank's failure to loan Tom the entire amount of $300,000.00. Once again John maintains he and his wife executed their mortgage pursuant to an agreement with Citizen's deceased past president, that Citizens would loan Tom the entire amount of $300,000.00 and would keep their mortgage in a drawer.

It is the trial court's function to weigh the evidence. *Woodruff v. Woodruff,* 418 P.2d 642, 645 (Okla.1966). John and his wife testified they understood Citizens would loan Tom the entire $300,000.00 and that they would receive a "letter of credit". Citizens put on evidence to show the $300,000.00 promissory note executed by Tom was part of a "collateral package" and should be construed as a "collateral mortgage note". Citizens presented testimony from several bank members and employees who testified the loan of $300,000.00 was not a guaranteed line of credit or a committed loan. The trial court is in the best position to examine and weigh the evidence and to determine the credibility of witnesses. We cannot say from an examination of the evidence and the inferences that may be drawn from the whole, that the trial court's decision is against the clear weight of the evidence.

Appellant's motion for attorney fees on appeal is denied. The judgment of the trial court is AFFIRMED.

BAILEY, P.J., and HUNTER, J., concur.

to include Tom's hand notes executed after that date?