Joan B. ORR and Jean Whitson,
Appellants,

v.

R.L. EDENS; Mary Ruth Edens, Deceased (Estate substituted); Marjorie Murry and Patsy Keeler, Individually and as Trustees of the R.L. Edens Trust, and as Executors of the Mary Ruth Edens Estate; E & E Enterprises, Inc.; and Eleventh & Utica Corporation, Appellees.

No. 78875.

Court of Appeals of Oklahoma,
Division No. 1.

May 25, 1993.

Rehearing Denied July 20, 1993.

Certiorari Denied Sept. 22, 1993.

Frank R. Hickman, Tulsa, for appellants.

William A. Harrington, Tulsa, for appellees, Marjorie Murry & Patsy Keeler, as Personal Representatives of the Estate of Mary Ruth Edens, Deceased.

James W. Keeley, Tulsa, for appellees R.L. Edens; E & E Enterprises, Inc.; Eleventh & Utica Corp.; Marjorie Murry, Individually; and Patsy Keeler, Individually.

### MEMORANDUM OPINION

JONES, Judge:

 Appellants (Plaintiffs below) initiated this proceeding in the nature of a shareholders' derivative suit, 18 O.S.1991 § 1126. In a derivative suit, the real controversy is between the corporation and the persons whose acts are complained of. The corporation is the real or beneficial plaintiff, even though it is joined as a party defendant. A derivative suit is equitable in nature, even if pursued on legal grounds. It is the duty of the trial court to protect the interest of the corporation and to exercise supervision over the conduct of the plaintiffs. 18 C.J.S. Corporations, § 413 (1990). The trial court, as a Court of equity, has absolute and exclusive control of the shareholders' derivative action when different parties are seeking different relief. 19 AmJur2d, Corporations § 2258 (1986). In the present case, the trial court did not abuse its discretion in the exercise of its authority over the party litigants.

The Petition alleged that Appellees (Defendants below) had transferred, without notice or consent, all of the assets of the two closely held family corporations to the R.L. Edens Trust. The trial court issued three interlocutory orders pertaining to hearings held on February 27, 1991, and December 9 and 10, 1991. The trial court found that certain assets had been improperly transferred and ordered the property reconveyed to the two closely held family corporations. In ruling on Appellees counterclaims, the trial court found that Appellants were not shareholders in the corporations, declared the shares void, and ordered their return. Appellants seek a timely review of the Journal Entry of Judgment filed December 18, 1991, which determined the shares of stock held by Plaintiffs were, in fact, never issued, and thus were declared void and ordered returned to R.L. Edens.

Appellants assert three propositions of error on appeal: that the Journal Entry of March 4, 1991, was final, and any successive hearing regarding the ownership of stock or property was improper. The Trial Court erred in rendering judgment for Appellees. The trial court erred in allowing an attorney, who had previously represented Appellees, to testify on their behalf. We begin our review by examining the three orders filed below.

The Journal Entry of March 4, 1991, found Appellees had breached their fiduciary obligation and transferred or conveyed, without valid consideration and in violation of Oklahoma corporation law, all of the assets of the two family corporations to the R.L. Edens Trust. The trial court then ordered Appellees to reconvey and transfer back to each of the respective corporations all of the personal property, cash and real property. The Court further ordered an accounting as to the reconveyance and transfer of funds. This order did not address the issue of Appellants' ownership of stock in the family corporations as Appellants argue. The Order is barren of any mention of ownership of the family stock.

The Journal Entry of March 14, 1991, states the defendants had been duly served with summons and the Court had jurisdiction of the parties and subject matter. It decided that the transfer of assets of the

two family corporations were invalid and unenforceable, and ordered an accounting of all assets transferred to the Trust.

The last Journal Entry filed December 18, 1991, found that Defendants, Marjorie Murry and Patsy Keeler, were not Directors of the two Corporations and dismissed them from the lawsuit. The Court also found that Plaintiffs, Orr and Whitson, were not shareholders of the two family corporations and decreed the stock certificates held by them void.

■ Appellants argue error in that there exists in this cause more than one final judgment. Intertwined with this reasoning are arguments that the first judgment became res judicata, and the Court and the parties were bound by this first judgment. This short summary of this argument is sufficient to discuss the law applicable in this situation.

During the time this action was being tried, 12 O.S.Supp.1990 § 1006 A, (now 12 O.S.1991 § 1006) was applicable to this cause. Because of the provisions of this statute, there was no final judgment until the entire case was disposed of. The trial court had full control of the form the final judgment would take at the end of the proceeding. Section 1006 reads as follows:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment as to one or more but fewer than all of the claims or parties only upon an express direction for the filing of judgment. *In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the judgment adjudicating all the claims* and the liabilities of all the parties is filed with the court clerk.

The counterclaim of the Defendant–Appellees for return of the stock certificates and a declaration that the certificates were void because they were never properly or legally issued by the corporation, or because they contained the forged signature of the President, and because the were never legally delivered to the current holders, was not decided until the filing of the third instrument. Under the last quoted statute, there was no final judgment until such time as the issues were completely decided by the trial court, and it follows that the objection that there is more than one judgment or that res judicata attached to the first judgment must fail. The final judgment rendered is composed of all three orders.

■ There is sufficient evidence to support the court's finding that the stock certificates were not delivered to the Appellants. The trial court considered all evidence adduced at trial, including testimony of the witnesses and the exhibits, and found that the Appellants were not shareholders of the two family Corporations. Appellants ask this court to reverse a factual determination based upon competent evidence. The findings of a trial court sitting without a jury are entitled to the same weight on appeal as the verdict of a properly instructed jury. *Maras v. Smith,* 420 P.2d 483 (Okl.1966). This Court cannot substitute its judgment for the trial court's decision merely because the record might also support a conclusion opposite to that reached by the trial judge. *Stovall v. Liberty Plan of America,* 414 P.2d 242 (Okl. 1966).

■ At a hearing on February 27, 1991, Appellees were represented by Attorney, George Underwood. The record indicates he formally withdrew from the case on September 12, 1991, prior to the second hearing held on December 9 and 10, 1991. He was then called as a witness, apparently to either verify or collaborate the testimony of Appellee, R.L. Edens. Appellants contend that allowing Underwood to testify was irregular. We disagree. An item of dispute central to the cause below was the ownership and *delivery* of certain shares of corporate stock to Appellants. Since Underwood had assisted in the drafting and preparation of the stock certificates, his

testimony was crucial to resolving the matter. As Underwood had formally withdrawn as attorney of record, he avoided a conflict of interest.[1] Reviewing the transcript in the light most favorable to Appellants, any conversations between Underwood and Appellants concerning a proposed delivery of the shares of stock were done by Underwood as lawyer for the Corporation, *not* as the legal representative of Appellants. We see no conflict of interest as alleged by Appellants. See 5 O.S.1991 Ch. 1, App. 3–A. Rule 1.6(a) pertains to client confidentiality, and the corporation did not object to the testimony. The comment to Rule 1.7 notes that allegations of conflict must be viewed with caution when made by an opposing party, for the allegation can be misused. Rule 1.8(b) and Rule 1.9 are not directly on point either. The fact remains that the testimony the attorney gave was not adverse to his present or former clients, but only to the Plaintiffs who were determined in this cause not to be stockholders of the corporations. The record does not support Appellant's contention that Underwood was both an advocate and a material witness at the hearing of December 9 and 10, 1991, by virtue of his withdrawal. 5 O.S.1991 Ch. 1, App. 3–A, Rule 3.7(a).

 Finally, we mention attorney fees, which Appellant requests without reference to authority for allowing these fees. The prior Oklahoma Corporation Act, repealed in 1986, provided for attorney fees. The new Business Corporation Act, 18 O.S. 1991 § 1001, et seq., does not have a provision for the recovery of attorney fees. It has therefore not been shown that the trial court erred in failing to award these fees. Accordingly, we affirm the trial court.

AFFIRMED.

ADAMS, P.J., and GARRETT, J., concur.

---

**1.** Additionally, it must be noted the inquiry to be made here is the admissability of the testimony of the attorney and not just the existence of a potential conflict of interest. Because we determine no ethical problem exists, we do not decide whether ethical problems (other than attorney-client privilege) affect admissibility of an attorney's testimony.